STIGER and another, Appellants, vs. INDUSTRIAL COMMIS-
SION and another, Respondents.

*February 7—March 3, 1936.*

For the appellants there was a brief by *Randall, Cavanagh,
Stephenson & Mittelstaed* of Kenosha, and oral argument
by *Roy S. Stephenson.*

For the respondent Industrial Commission there was a
brief by the *Attorney General* and *Mortimer Levitan,* assist-
ant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Adams there was a brief by *Thorson & Seymour* of Elkhorn, and oral argument by *Arthur T. Thorson.*

NELSON, J.  On September 11, 1935, Edward Adams was employed by the plaintiff Stiger as superintendent of the latter's estate located in this state.  Both were subject to the Workmen's Compensation Act.  At about 6:30 o'clock in the morning of that day, while Adams was engaged in picking flowers for his employer, he stepped upon a wooden cover of a concrete manhole.  The cover broke, and his left leg was precipitated into the manhole, which was about three feet deep.  As a result of his leg coming in contact with the side or edge of the manhole it was bruised on its inner side.  The bruises extended beyond the leg to the abdomen on the left side.  He had some difficulty in getting back to the house after the accident, and thereafter performed no work at any time before the operation which preceded his death.  He complained of nausea and pain in the left lower side of his abdomen.  That same evening a pronounced swelling in the left inguinal region was discovered, which was very tender.  Two days later he consulted Dr. Richardson, his family physician.  The doctor observed the bruises and a protrusion or swelling in the left inguinal region about the size of a hen's egg.  Dr. Richardson diagnosed the injury as a traumatic hernia and advised rest until the swelling and tenderness disappeared.  Adams promptly reported the accident to his employer, who in turn reported the accident to the plaintiff, Eagle Indemnity Company, his insurer.  On October 28th, at the request of the Eagle Indemnity Company, Adams went to Milwaukee for an examination and an operation if deemed advisable.  He was examined by Dr. B. H. Oberembt, who concluded that Adams had a hernia, and who advised an immediate operation.  Adams was hospitalized that afternoon and operated upon by Dr. Oberembt

the following morning. The usual hernia operation was performed. Twelve hours later Adams' abdomen became distended and within a day or two toxic, resulting in his death on November 3, 1933. The immediate cause of death was paralytic ileus, *i. e.,* paralysis of the small intestines. According to the medical testimony, there are a number of causes of paralytic ileus, the most common one being peritonitis. Sometimes it results from idiopathic causes. It may be caused by a marked handling of the bowel. Dr. Oberembt testified, basing his opinion on what he found at the time of the operation, that the hernia condition was of long standing. He testified that he found certain heavy fibroid adhesions which, in his opinion, could not be formed between September 11th and October 29th. Prior to the accident on September 11th, Mr. Adams had never complained to anyone to whom he likely would have complained, that he was suffering from a hernia. The commission found the facts substantially as stated and concluded as follows:

"The disabling pain, the nausea and the fact that he was wholly incapacitated are symptoms which are usually present in traumatic hernia cases and all these symptoms were present in the instant case. The respondent contends that the hernia was one that existed prior to the injury. Even if this were true, the examiner's record discloses the respondent's doctor testified that the injury had aggravated the condition to such an extent that an operation was immediately necessary. The injury the deceased received, regardless of whether it caused traumatic hernia or aggravated a pre-existing one, was a compensable injury and the resultant death was proximately caused by the injury."

The circuit court confirmed the award on the ground that it was supported by credible evidence. The court, in its decision, said:

"It seems from the record in this case that there was clearly justification for the commission's findings here, whether based upon the rules heretofore approved as applicable to

hernia cases, or whether based simply upon the facts as showing that the applicant was so severely physically injured while engaged in his employment as to result in the necessity for an operation and to cause his death as a result of the accident. It seems apparent that even if this man at the time of the accident showed conditions resulting from a prior hernia, the accident so aggravated his condition as to have caused his subsequent difficulties resulting in death, and requiring compensation under the law as heretofore developed and laid down."

The plaintiffs contend that the credible evidence does not sustain the commission's finding that the deceased sustained a compensable injury which proximately caused his death. The plaintiffs argue that since the testimony of Dr. Oberembt is not disputed, and since he found conditions which clearly indicated that the hernia was not of recent origin, there was no credible testimony upon which the commission could find that Adams sustained a hernia as a result of the accident on September 11th. It is undisputed that Adams was, at the time of the accident, about fifty years of age, weighed about two hundred pounds, was healthy and robust, and had never before complained of abdominal pains or told anyone that he was ruptured or had a hernia. He unquestionably sustained a severe fall when his left leg broke through the cover of the manhole. He immediately quit work and had difficulty getting to his house. The pronounced swelling in the left inguinal region soon appeared. Two days later Dr. Richardson diagnosed the trouble as traumatic hernia. Some weeks later Dr. Oberembt, the surgeon for the insurance company, examined Adams and reached a similar conclusion. He advised an operation, and actually did perform an operation the following day. Shortly thereafter Adams' abdomen became distended and within a day or two his condition was toxic. The cause of his death was paralytic ileus. Under the circumstances, it is our opinion that it is quite immaterial

whether the deceased had had, prior to September 11th, a hernia of long standing. His condition, if of long standing, was in a static condition which gave him no discomfort and of which condition he was not conscious. Whatever condition existed on September 11th, was certainly greatly aggravated by the accident, and certainly resulted in compensable injury. Dr. Oberembt, in good faith, diagnosed the condition as traumatic hernia and advised an operation. As a result of the operation, infection probably developed, which ultimately caused his death. Dr. Oberembt testified that Adams' death did not result from the hernia, that it did result from the operation, and that the operation was necessary because of the injury.

While there is no suggestion of carelessness or lack of skill on the part of Dr. Oberembt, it is clear that the commission was warranted in finding that an accident occurred, that it resulted in an injury which reasonably necessitated an operation, that as a result of the operation infection entered the abdomen which ultimately caused Adams' death. Whether the infection entered Adams' abdomen, in spite of the exercise of the highest skill or as a result of lack of skill or carelessness, is immaterial. What was said in *Lakeside Bridge & Steel Co. v. Pugh*, 206 Wis. 62, 66, 238 N. W. 872, is applicable here, even though no malpractice is suggested:

"Appellant's contention that the employer is not liable for the aggravated damages caused by the malpractice of the physician and surgeon is contrary to virtually all the authorities of the country, to the spirit of the Workmen's Compensation Act, and to the doctrines laid down in *Selleck v. Janesville*, 100 Wis. 157, 75 N. W. 975; *Pawlak v. Hayes*, 162 Wis. 503, 156 N. W. 464; *Fisher v. Milwaukee E. R. & L. Co.* 173 Wis. 57, 180 N. W. 269; 8 A. L. R. p. 506; 39 A. L. R. p. 1268."

If an employer must compensate an employee for an actual injury sustained as well as for the injuries caused by the

malpractice of a surgeon who treats an injured employee (and such is the law), then it must logically follow that an employer must compensate an employee, or his dependents in case of his death, for injuries which properly may be found to have resulted from an operation skilfully performed upon an employee who has been injured while performing services growing out of and incidental to his employment.

It is our opinion that the circuit court properly upheld the award of the commission.

*By the Court.*—Judgment affirmed.