T.J. Jenkins, Plaintiff,

v.

Carl Sabourin, and Badger Mutual Insurance Company, a domestic corporation, Defendants-Appellants-Petitioners,

Briggs & Stratton Corporation, Defendant-Respondent.

Supreme Court

*No. 80–624. Argued September 9, 1981.—
Decided November 3, 1981.*

(Also reported in 311 N.W.2d 600.)

For the petitioners there were briefs by *Ellis R. Herbon, Robert M. Koch* and *Herbon & McLaughlin* of Milwaukee, and oral argument by *Ellis R. Herbon.*

For the defendant-respondent there was a brief by *Elwin J. Zarwell, Peter W. Bunde, Thomas Armstrong* and *Quarles & Brady* of Milwaukee, and oral argument by *Mr. Bunde.*

HEFFERNAN, J.   This is a review of a decision of the court of appeals[1] which affirmed the order of February 20, 1980, of the Circuit Court for Milwaukee County, GEORGE A. BURNS, JR., Circuit Judge, dismissing the cross-claim of the defendants, Carl Sabourin and Badger Mutual Insurance Company, because it failed to state a claim upon which relief could be granted.

The issue posed on this review is whether the exclusivity-of-remedy provision of the Workers Compensation Act (ch. 102, Stats.) precludes a common-law cause of action by an employee, who has sustained a compensable

[1] Unpublished opinion, December 9, 1980.

injury, against the employer for negligently providing medical attention for that injury by persons employed for that purpose at the employer's plant.

We conclude that the exclusivity of the remedy of workers compensation bars a third-party tortfeasor's action for contribution for negligence of the employer in the course of providing medical attention to an injured employee. The employer, Briggs & Stratton, was acting in pursuance of its statutory duty as an employer to provide medical attention to its injured employee, Jenkins. Whether or not it did so negligently is irrelevant under the Workers Compensation Act. We conclude that Briggs acted only in its capacity as an employer under the Act and that the pleading herein, even as liberally construed, fails to allege that Briggs functioned in any other capacity. Accordingly, we affirm the decision of the court of appeals upholding the circuit court's dismissal of the claim.

The facts show that the plaintiff Jenkins was injured while at work on March 31, 1976, at Briggs as the result of a prank of a fellow employee, Carl Sabourin. Sabourin released a toy snake from a box, startling Jenkins and causing him to fall against a steel rack, injuring his ribs, shoulder, and spine.

Pursuant to sec. 102.29, Stats.,[2] Jenkins commenced a third-party action against Sabourin and his household insurer, Badger Mutual Insurance Company. He also joined Briggs as a nominal defendant because it paid compensation and would ordinarily be subrogated to any

[2] At the time of the original injury, March 31, 1976, sec. 102.29, Stats., permitted a third-party action against a co-employee. Sec. 102.03(2) has, however, been amended by ch. 195, sec. 2, Laws of 1977. That amendment, with certain exceptions not applicable here, bars a common-law third-party action against a co-employee. See Gerger v. Campbell, 98 Wis. 2d 282, 284, 297 N.W.2d 183 (1980).

recovery against a third-party tortfeasor pursuant to sec. 102.29(1). Sabourin and Badger cross-claimed against the employer, Briggs, alleging there was a failure to exercise ordinary care in the course of providing medical attention to Jenkins and that, were Jenkins to recover from Sabourin and his insurer, they are entitled to recovery over against Briggs. The relevant language of the cross-claim is that:

"(10) If . . . Plaintiff sustained any injury . . . said damages were caused or contributed to by Briggs & Stratton in that Briggs & Stratton failed to exercise ordinary care in providing medical attention to the Plaintiff. . . ."

On the motion of Briggs, the trial court dismissed the cross-claim on the ground that it failed to state a claim for which relief could be granted. The argument of Briggs, which was adopted by the trial court, was that any injury or aggravation of injury as a result of the medical treatment of the work injury on March 31, 1976, was attributable to the original injury—that not only the original injury but any aggravation thereof was compensable by the employer under the Workers Compensation Act. The trial court concluded that, therefore, the employer was "immune from all liability for contribution to the Defendants for any injuries arising out of the Plaintiff's employment, including the aggravation of any such injury as a result of allegedly negligent medical medical treatment." That conclusion of the trial court was based upon the provision of the statute previously cited, sec. 102.03(2), Stats. 1975. It provides in part:

". . . the recovery of compensation pursuant to this chapter shall be the exclusive remedy against the employer and the worker's compensation insurance carrier."

When there has been a motion to dismiss because of the failure to state a claim for which relief can be granted, this court, as must the trial court and the appellate court, can rely only upon the allegations of the claim itself. Nevertheless, the language of the pleading should be liberally construed in favor of a conclusion that a cause of action or a claim has been stated if such conclusion is reasonably possible.[3]

One reasonable interpretation of the language of the cross-claim would be that Briggs failed to exercise ordinary care because it provided no medical attention for Jenkins following his work injury. It is, however, implicit in these proceedings, and it is not disputed by the employer, that Briggs provided some nursing services for its employees within the walls of its plant. Liberally construing the complaint, we conclude that it is the intent of the defendant Sabourin and his insurance company to allege that the medical attention given T.J. Jenkins by the Briggs nursing staff did not comport with the required standard of ordinary care and that some injury was caused by the lack of ordinary care.

Beyond this liberal construction of the pleadings we cannot go. The affidavits which have been annexed to the briefs and appended to the record and the assertions of facts in respect to the nature of Briggs' negligence are not a part of the record and cannot be considered. *On-*

[3] The claim in toto as asserted by Sabourin and Badger merely stated:

"10. If in fact the Plaintiff sustained any injury on March 31, 1976, with resultant damages as he alleges, said damages were caused or contributed to by Briggs & Stratton in that Briggs & Stratton failed to exercise ordinary care in providing medical attention to the Plaintiff. If these Defendants are held liable to the Plaintiff, they will be entitled to indemnification or contribution from Briggs & Stratton according·to law."

derdonk v. Lamb, 79 Wis. 2d 241, 249, 255 N.W.2d 507 (1977), and cases cited therein.

Accordingly, we disregard them and confine our attention to what we deem to be a reasonable construction of the defendant's pleadings—that Briggs supplied medical attention to the plaintiff and that it did so negligently. Surprisingly, perhaps, the pleading contains no allegation that the original work injuries were aggravated by the treatment received from Briggs.

Following the trial court's dismissal of the cross-claim of Sabourin and Badger Mutual, the injured employee, Jenkins, settled his case with Sabourin and Badger. Jenkins' action was then dismissed pursuant to that settlement, and Sabourin and Badger Mutual appealed the dismissal of their cross-claim against Briggs to the court of appeals. The court of appeals' decision affirmed that order. Sabourin and Badger Mutual petitioned for review of that decision. Review was granted, and on review we affirm the decision of the court of appeals.

Jenkins' complaint alleges that he was an employee of Briggs. The answer of Sabourin and Badger alleges that Sabourin was the co-employee of Jenkins. Thus, it is not disputed that the initial relationship of Jenkins and Briggs was one of employee and employer, nor is there any dispute at this juncture that Jenkins was paid worker's compensation by Briggs.

The crucial question is what was the relationship of Jenkins to Briggs at the time of the allegedly negligent medical attention.

Sabourin contends that no relationship protected by the Workers Compensation Act existed at the time of the medical attention, and, hence, the act of furnishing services was not in the course of employment and was unrelated to the provisions of the Act. Therefore, it is argued, the exclusivity provision is inapplicable because

Briggs simply was not then an employer within the provisions of the statute.

The argument of Sabourin and Badger is the simplistic one that, at the time of the allegedly deficient medical attention, Jenkins was performing no service whatsoever for Briggs nor any service growing out of or incidental to his employment. In stating their argument, the defendants paraphrase the provisions of sec. 102.03 (1) (c) 1, Stats. Thus, it is their argument that any injury occasioned by the negligent medical attention was under circumstances whereby the conditions for an employer's liability under the Workers Compensation Act were not met, that the Act was inapplicable to this injury, and, hence, in respect to any injury during the course of treatment, the exclusivity of the workers compensation remedy was not triggered.

This assertion is, however, incorrect. It is boilerplate law that any medical injury as the consequence of treatment of a work-related injury relates back to the original compensable event and the consequences of medical treatment, whether the result of negligence or not, are the liability of the employer under the Act. *Stiger v. Industrial Comm.*, 220 Wis. 653, 265 N.W. 678 (1936) ; *Lakeside Bridge & Steel Co. v. Pugh*, 206 Wis. 62, 238 N.W. 872 (1931). As we said in *Stiger:*

"If an employer must compensate an employee for an actual injury sustained as well as for the injuries caused by the malpractice of a surgeon who treats an injured employee (and such is the law), then it must logically follow that an employer must compensate an employee, or his dependents in case of his death, for injuries which properly may be found to have resulted from an operation skilfully performed upon an employee who has been injured while performing services growing out of and incidental to his employment." At 657–58.

It is beyond doubt at this late date in the history of our workers compensation law that injury during the course of medical attention to a covered industrial injury is in itself compensable under the Act.

While there may be circumstances where the treatment injury is separate from the original work injury, it is clear that, nevertheless, the employer is liable for compensation payments for the subsequent injury sustained in the course of treating the compensable injury. It is equally clear that under such circumstances the Wisconsin law, as a matter of policy, when it imposes this liability upon the employer, clothes the employer with immunity from tort responsibility. He can be liable only for compensation payments, which may be augmented by reason of the aggravation resulting from the treatment. It is established Wisconsin law that, when an employee is treated for a work-related injury and incurs an additional injury during the course of treatment, the second injury is deemed as one growing out of, and incidental to, employment—in the sense that the employer, by virtue of the Act, becomes liable for the augmented injury.

In the absence of other factors, which may or may not be relevant, injury in the course of such treatment subjects the employer only to compensation liability and not to damages in tort.

There is, however, another factor—at least in the reasoning of Sabourin and Badger—that in this case dictates the conclusion that Briggs was not an employer entitled to immunity from tort. They contend that Briggs, when it gave medical attention to its injured employee Jenkins, stepped out of its role as an employer and assumed the role of a provider of medical services, an entity which is entitled to no immunity under the Workers Compensation Act.

Combined with the assertion discussed above—that Jenkins was not performing services for the company when he was receiving treatment—is the argument that factually Briggs "was providing medical services to the plaintiff completely separate and apart from any employment function." Asserting this proposition, however, does not make it so. But petitioners argue that at any rate what Briggs was doing was no different than what would have been done in a private medical clinic not operated by Briggs and that such a clinic could have been sued and no immunity under the Workers Compensation Act could have been asserted. Because the function—providing medical services—is the same, it is urged that the result of suit must be the same. Yet if Briggs cannot be sued in tort for its medical function, we could not conclude that an independent clinic, therefore, could not be. Hence, it is at once apparent that whether the function is the same may not be the controlling factor. At the very least, it begs the question to conclude that, because a party denominates Briggs a medical provider rather than an employer, Briggs is not an employer clothed with immunity under the Act. It may be conceded from the record and the arguments of counsel that Briggs furnished medical services to Jenkins, but that conclusion does not *ipso facto* exclude Briggs from having furnished those services in its capacity as an employer under the Workers Compensation Act.

The cross-claim alleges that Briggs "provid[ed] medical attention to the Plaintiff." There is no assertion that the employment relationship had terminated, nor is there anything in the pleading to indicate that the role of medical provider was inconsistent with Briggs' role as the employer. All that can be gleaned from the pleading is that Briggs, who was an employer, has in addition provided medical attention. The most this can mean is that

Briggs performed in more than one function—first, in the usual employer-employee relationship and, second, in giving medical attention to an employee after the happening of a covered work injury.

2A Larson, *Workmen's Compensation,* sec. 72.80, p. 14–112, points out that what has been called the "dual capacity" doctrine may result in the liability of an employer to an employee for tort (*i.e.,* the removal of the shield of the Workers Compensation Act as an exclusive remedy) only if the employer occupies "a second capacity . . . *independent* of those imposed on him as an employer." (Emphasis supplied.) He emphasizes:

"One thing is clear. Dual capacity will not be found merely because the employer has a number of departments or divisions that perhaps are quite separate in their functions and operations." Sec. 72.80, p. 14–115.

Thus, the fact upon which appellant relies—that the department of Briggs that allegedly was negligent had a different function than the department in which Jenkins sustained his injury—is not sufficient to trigger tort liability. The basic question is whether the function of the medical department was undertaken because of the employment relationship and the obligation to injured workers which could be discharged in this way or whether the purpose of the department was to furnish medical attention aside and apart from the employer's responsibilities to an injured employee.

To ask the question is tantamount to answering it. There is no allegation that Jenkins would have been treated at all by Briggs were it not for the prior work-related injury status. What evolved as the result of the furnishing of treatment was but another facet of the employer relationship under the Workers Compensation Act. There is no intimation in the pleadings that anyone other than a work-injured employee could be treated at

the Briggs nursing station. Under the Workers Compensation Act an employer is obligated to provide for medical treatment, but there is no obligation to treat anyone else; and insofar as the record reveals, Briggs did not hold itself out as a provider of health care services to the general public, or even to employees not injured in the course of covered employment.

In conformity with the Larson analysis, difference of function is not in itself significant. What is significant is whether or not the function creates obligations that would exist absent those that inure by virtue of the employer's status. As Larson states, in a situation where the dual capacity existed (stevedore employer and shipowner), the duty of an owner furnishing a seaworthy vessel would exist although the shipowner had no employees. Larson, sec. 72.80, p. 14–117. Here, the only obligation generated or duty served by the in-house medical treatment was the subsisting one to injured employees. There was no evidence of any obligation to, or the holding out of, medical services to anyone but employees. The obligation to a work-injured employee of the medical-service function, whether performed by the employer or by another, stemmed wholly from, and was a part of, the employer's function and is mandated by the Workers Compensation Act.

This situation is unlike that in *Duprey v. Shane,* 39 Cal. 2d 781, 249 Pac. 2d 8 (1952), where the injured employee was at work in a chiropractic clinic which held itself out to serve the general public. When Shane adjusted Duprey's neck, he, as a doctor of chiropractic, undertook an obligation which was a part of the clinic's general obligation to the public. Here, however, there was no responsibility to any except those persons who were in an employment relationship. While the function of the Briggs nursing staff was treatment, it was treat-

ment of employees, an obligation mandated by the Workers Compensation Act itself. Sec. 102.42(1), Stats. To use the term employed by Larson, there was no second *persona*. The only *persona* here involved was the employer, whose obligations arose only under the Act. Remedies under the common law are hence barred by sec. 102.03(2) of the Act.

While *Duprey v. Shane, supra,* is relied upon by the petitioners, that case, as here been pointed out, involved a chiropractor who had obligations to the general public. Moreover, that case has not been followed even in California in circumstances similar to that of the instant case.

In *Dixon v. Ford Motor Co.,* 53 Cal. App. 3d 499, 125 Cal. Rptr. 872 (1975), an employee was treated at the aid station within the plant. Undisputably, the treatment given failed to reach the standard of ordinary care. Therein, the court held that treatment of the injury, albeit negligent treatment, was an incident of the employment relationship. It distinguished *Duprey,* because the chiropractor in *Duprey,* who was on call to the public, responded in the same way he " 'would have assumed had he been called in on the case.' " At 507. The California court made it clear that *Duprey* had not been, and would not be, extended beyond its precise facts. Hence, the jurisdiction which first enunciated the doctrine in respect to medical care did not allow tort recovery in a case nearly identical to this one.

The only jurisdiction which has permitted tort recovery under similar facts is *McCormick v. Caterpillar Tractor Co.,* 82 Ill. App. 3d 77, 402 N.E.2d 412 (1980). The Illinois court concluded, in an *ipse dixit* holding, that, "Thus a doctor-patient relationship is created between the employer and the employee and the employer takes on a different *persona.*" At 79–80.

We consider the dissent in that case to be the more persuasive. The dissenting judge reasoned, "Caterpillar was providing medical services but only as a consequence of its status as an employer." At 83. That is the situation in the instant case—a crucial distinction which the majority in *Caterpillar* brushed aside, relying instead on what it characterized as the doctor-patient relationship. Because it failed to give any weight to the reason why Caterpillar provided the service of physicians on its staff —the discharge of its duty as an employer to a work-injured employee—we consider the majority opinion to be erroneous.

The *Caterpillar* majority in part based its conclusion on the apparent incongruity of permitting a tort recovery from a negligent private physician, but not from an in-house physician. It seems to us that this incongruity, if such it be, is part and parcel of the compromise that constitutes the Workers Compensation Act. When an employee is injured by the negligence of a fellow employee or of his employer, he can recover; but he can also recover these same scheduled benefits when he cannot prove negligence or when it is clear there was no negligence. This is equally true where there is additional injury by aggravation of a compensable injury. The worker may recover compensation payments for the aggravation, although the subsequent medical treatment by an outside physician is free of negligence; and even if the subsequent physician is negligent the employer is liable under the Act for the consequences of that medical malpractice.

If the dual-capacity doctrine were to be applied as petitioner seeks, it would be necessary to prove in all cases that the in-house treatment was negligent, for the contention is that the injury was not in the course of the employment covered by the Act, but in a separate capacity. This is contrary to *Stiger, supra,* and established

Wisconsin law. The remedy proposed by petitioners is hardly a step forward in workers' rights. They seek by their position in this case to place the burden of a common-law tort action upon workers who were injured by in-house treatment of a work-related injury.

It is, however, true as the petitioners contend that, under our statutes, sec. 102.29(3), Stats., an employee may take the compensation to which entitled and also may maintain a civil action for malpractice against any physician, chiropractor, or podiatrist for malpractice. The statute recites that the employer is not allowed any right to share in these proceeds, as he may in respect to other third-party tortfeasors.

If this represents the policy of the state, why then may the worker not recover against a health-provider nurse who furnishes medical attention in the employer's establishment. Facially, it would appear, although we do not decide, that the worker could recover under this statute even from a physician who served full time on an employer's staff.

Apart from this statute, it has always been true that an employee injured by the malpractice of an outside physician had a right of action (subject to some recoupment of the compensation payments by the employer).

If malpractice is malpractice is malpractice, why not malpractice against any health provider even though care is provided in the course of conduct as an employer. As this court pointed out in *Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 290 N.W.2d 276 (1980), however, the Workers Compensation Act no doubt, in some cases, results in inequities, but its provisions are the result of decades of debate prior to its passage. It represents a delicate balancing of the interests represented in our industrial society. It perhaps is not "fair" that an employer must always pay regardless of fault, even where

the fault is that of a third party, but this is a part of a compact arrived at by the legislative process.

Where conditions of liability exist, the employer must always pay and the worker always recovers. The worker, although not afforded full tort damages, is assured of prompt and sure payment and is relieved of the onus of evidentiary proof and the costs of common-law litigation. The employer on the other hand is relieved of the possibility of harassing tort claims and the uncertainties of tort judgments, but the employer must compensate in scheduled amounts regardless of fault.

New liabilities on employers or employees should not be imposed by courts without compelling and well understood reasons. While a tort remedy could be beneficient and just in a particular case, such precedent, unless carefully considered from the viewpoint of general state policy, could well gut the Workers Compensation Act, create injustice, and substantially impair the exclusivity-of-remedy provision, which has made the Workers Compensation Act tolerable to employers.

As we stated in *Mulder, supra,* at 180 ff., this comprehensive, well thought out legislative scheme should not be tinkered with by the courts. Only if we were convinced that the disparity of treatment alleged here was of constitutional proportions should there be any court-mandated change in the effect of the Workers Compensation Act. No constitutional infirmity is urged in these proceedings. To the extent that the present law may be disparate, unequal, or uneven in its application, it is a question for the legislature to address.

*By the Court.*—Decision affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. I dissent for two reasons: First, the cross-claim of Sabourin and Badger does not contain "a short and plain state-

ment of the claim, identifying the transaction, occurrence or event or series of transactions, occurrences, or events out of which the claim arises" as required by sec. 802.02(1), Stats. 1979–80. Accordingly I would vacate the decision of the court of appeals and would modify the order of the circuit court to grant Sabourin and Badger leave to replead. Second, even if I were to interpret the cross-claim as the majority does, I would conclude that the cross-claim states a claim upon which relief may be granted, and I would therefore reverse the court of appeals and remand the matter to the circuit court.

## I.

The cross-claim is fully stated in paragraph 10 of Sabourin's amended answer as follows:

"10. If in fact the Plaintiff sustained any injury on March 31, 1976, with resultant damages as he alleges, said damages were caused or contributed to by Briggs & Stratton in that Briggs & Stratton failed to exercise ordinary care in providing medical attention to the Plaintiff. If these Defendants are held liable to the Plaintiff, they will be entitled to indemnification or contribution from Briggs & Stratton according to law."

This cross-claim is part of the answer which is a series of denials. Paragraph 10 read alone or read with the answer simply states that if Jenkins sustained any injuries they were caused or contributed to by the negligence of Briggs & Stratton in providing medical care to Jenkins.

Sec. 802.02(1), Stats. 1979–80, requires that:

"A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain . . . a short and plain statement of the claim, identifying the transaction, occurrence or event or series of transactions, occurrences,

or events out of which the claim arises and showing that the pleader is entitled to relief. . . ."

The cross-claim in the case at bar does not identify the transaction, occurrence or event or series of transactions, occurrences or events out of which the claim arises as required by sec. 802.02(1) and does not provide a sufficient basis on which to determine whether the pleader is entitled to relief.

Briggs moved to dismiss the cross-claim for failure to state a claim upon which relief may be granted. Sec. 802.06(2) (f), Stats. 1979–80. In ruling on such a motion this court, as well as the circuit court and the court of appeals, is bound by the pleadings and may not add facts to aid or defeat the allegations contained therein. *Onderdonk v. Lamb,* 79 Wis. 2d 241, 249, 255 N.W.2d 507 (1977). The majority, relying on facts presented in Sabourin's and Badger's briefs and inferences therefrom, constructs a pleading for Sabourin and Badger. The majority reads into the cross-claim the following allegations: Jenkins suffered a work-related injury; Briggs employed a nursing staff to furnish nursing care in its plant; Briggs' medical staff rendered medical care to Jenkins; Briggs' medical care was negligently administered and aggravated the work-related injury; and finally, Briggs does not render medical services to any person who is not an employee and who has not suffered a work-related injury. As will be demonstrated later, these facts form the basis of the majority's decision; any change in the facts might alter the majority's decision.

Because the facts upon which the majority relies do not appear on the face of the cross-claim, the question becomes whether it is reasonable to infer their existence and whether these are the only facts that can be inferred. I think it is reasonable to infer alternative facts such as, Jenkins' injuries do not stem from a work-related injury but solely from another injury or from

the medical care; Briggs' medical staff (which I gather from the documents in the record includes at least one doctor as well as nurses) treats all employees at work whether or not the injury is work related; and Briggs' medical staff treats the families of employees. If several alternative inferences are reasonable—and I think they are—to determine if the cross-claim states a claim upon which relief may be granted, all reasonable alternatives must be considered. This court has frequently stated that a pleading should be dismissed on the merits (*i.e.* as legally insufficient) "only if it is quite clear that under no conditions" can the party recover. *Morgan v. Pennsylvania General Insurance Co.*, 87 Wis. 2d 723, 731, 275 N.W.2d 660 (1979).

If the majority and I were to draw inferences from the cross-claim in the case at bar, we both would be pleading our own facts and then determining whether the facts plead state a claim. This court should take either the position urged by Briggs, namely that under any and all factual circumstances a non-physician employer cannot be liable in tort to its employees for medical malpractice, or the position urged by me, namely that the cross-claim is insufficient to enable a court to determine if it states a claim. I would, as stated above, vacate the decision of the court of appeals and would modify the order of the circuit court to grant Sabourin and Badger leave to replead the cross-claim.

## II.

Because the majority has not allowed Sabourin and Badger to replead, I must determine whether the majority's reading of the cross-claim (see p. 325 of this dissent) sets forth a claim upon which relief may be granted. I conclude that it does. I reach this conclusion reasoning as follows: the injury suffered by the injured-

on-the-job employee allegedly resulting from the negligent medical care provided by the nursing staff employed by Briggs at the Briggs plant does not arise out of the employment[1] but arises from a second capacity occupied by the employer. When Briggs, the employer, directly furnishes medical services to the employee who suffers a work-related injury, Briggs enters into a sec-

---

[1] An employer is liable under worker's compensation if five conditions concur: (1) the employee sustains an injury; (2) at the time of the injury both the employer and the employee are subject to the Act; (3) at the time of the injury the employee is performing services growing out of and incidental to his employment; (4) the injury is not intentionally self-inflicted; and (5) the accident or disease causing injury arises out of this employment.

Sec. 102.03(1), Stats. 1977, provides as follows:

"102.03  **Conditions of liability.**  (1) Liability under this chapter shall exist against an employer only where the following conditions concur:

"(a)  Where the employe sustains an injury.

"(b)  Where, at the time of the injury, both the employer and the employe are subject to the provisions of this chapter.

"(c)1.  Where at the time of the injury, the employe is performing service growing out of and incidental to his employment. Every employe going to and from his employment in the ordinary and usual way, while on the premises of his employer, or while in the immediate vicinity thereof if the injury results from an occurrence on the premises, shall be deemed to be performing service growing out of and incidental to his employment; so shall any employe going between an employer's designated parking lot and the employer's work premises while on a direct route and in the ordinary and usual way; and so shall any fireman or municipal utility employe responding to a call for assistance outside the limits of his city or village, unless such response is in violation of law. The premises of his employer shall be deemed to include also the premises of any other person on whose premises service is being performed.

". . .

"(d)  Where the injury is not intentionally self-inflicted.

"(e)  Where the accident or disease causing injury arises out of his employment."

ond legal relation with the employee—that of health care provider. As health care provider, Briggs has duties to the employee independent of the employment relation and is subject to tort liability for breach of these duties. Because the injury resulting from malpractice does not arise out of the employment, the injury does not fall within the worker's compensation act, and the exclusivity-of-remedy provision of the worker's compensation act[2] does not bar the employee's or Sabourin's and Badger's claim against Briggs.

In contrast, the majority concludes that Briggs acted only in its legal relation as employer, not in a distinct second legal capacity as health provider, in directly providing nursing care at the plant site.

The majority and I reach opposite conclusions although our analyses of the dual-capacity doctrine begin at the same place, namely with Professor Larson's discussion of dual capacity as set forth in his treatise, *Workmen's Compensation Law*. The dual capacity theory asks whether the employer was at one and the same time functioning not only as employer but in a second capacity which generates obligations independent of those imposed on him as employer. If the employer was functioning in a second capacity, it is liable in tort if it breaches any duties flowing from the second capacity.

---

[2] Sec. 102.03(2), Stats. 1979–80, provides as follows:

"(2) Where such conditions exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employe of the same employer and the worker's compensation insurance carrier. This section does not limit the right of an employe to bring action against any coemploye for an assault intended to cause bodily harm, or against a coemploye for negligent operation of a motor vehicle not owned or leased by the employer, or against a coemploye of the same employer to the extent that there would be liability of a governmental unit to pay judgments against employes under a collective bargaining agreement or a local ordinance."

Larson explains the essence of the dual-capacity doctrine as follows:

"In comparatively recent years there has appeared in various contexts what might be called the dual-capacity doctrine. Under this doctrine, an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer."[3]

"The primary issue in this class of cases is: what is the test of true dual capacity?

"One thing is clear. Dual capacity will not be found merely because the employer has a number of departments or divisions that perhaps are quite separate in their functions and operations. . . ."[4]

"The decisive dual-capacity test is not concerned with how separate or different the second function of the employer is from the first but with whether the second function generates obligations unrelated to those flowing from the first, that of employer. . . ."[5]

---

[3] 2A Larson, *Workmen's Compensation Law* sec. 72.80 at 14–112 (1974).

[4] 2A Larson, *Workmen's Compensation Law* sec. 72.80 at 14–115 (1974).

[5] 2A Larson, *Workmen's Compensation Law* sec. 72.80 at 14–117 (1974).

For discussions of dual capacity, *see e.g.*, *Warwick v. Hudson Pulp & Paper Co., Inc.*, 303 So. 2d 701 (Fla. App. 1974); *Trotter v. Litton Systems, Inc.*, 370 So. 2d 244 (Miss. 1979); Hanna, *Exclusivity of Workmen's Compensation Remedy in Relation to Further Injury Resulting From Carrier's Non-Medical Investigation of Extent of Employee's Industrial Disability*, 5 S.W.U.L. Rev. 118 (1973); Comment, *Workmen's Compensation and Employer Suability: The Dual-Capacity Doctrine*, 5 St. Mary's L.J. 818 (1974); Note, *The No-Duty Rule in New York: Should Company Doctors Be Considered Co-Employees?*, 9 Hofstra L. Rev. 665 (1981); Note, *Dual Capacity Doctrine: Third-Party Liability of Employer Manufacturer in Products Liability Litigation*, 12 Ind. L. Rev. 553 (1979).

The majority uses two principal approaches to determine if the employer is functioning as employer or in a second capacity. First, the majority uses a "but for" test. The majority says that "[t]he basic question is whether the function of the medical department was undertaken because of the employment relationship and the obligation to injured workers which could be discharged in this way or whether the purpose of the department was to furnish medical attention aside and apart from the employer's responsibilities to an injured employee." *Supra*, p. 318. The majority's answer is that the function of the medical department was undertaken because of the employment relation. The majority notes that the original injury would not have occurred but for Jenkins' employment by Briggs and that Briggs would not have rendered medical treatment to Jenkins but for the fact that he was an employee and had a work-related injury. The majority then concludes that Briggs' direct medical care is part of the employer's responsibilities to the employee and is merely one facet of the employment relationship. The majority's "but for" test is helpful in excluding or identifying any function of the employer which has absolutely no connection with the employment relation. The "but for" test is not, however, helpful in identifying those functions which have some connection with the employment relation but which should nevertheless be viewed as not arising from the employment.[6]

[6] This "but for" test is tied to the general notion that worker's compensation benefits are not based on the acts or omission of the employer but on status, *i.e.* on the existence of the employment relationship. As the United States Supreme Court said in *Cudahy Packing Co. v. Parramore,* 263 U.S. 418, 423 (1923):

"Workmen's Compensation legislation rests upon the idea of status, . . . that is, upon the conception that an injured workman is entitled to compensation for an injury sustained in the service of an industry to whose operation he contributes his work as the owner contributes his capital—the one for the sake of the

As the majority recognizes, the "but for" test sweeps too broadly. The dual capacity theory does not require that the employment relation be terminated or that the second legal capacity have no connection or relation whatever with the employment status. The dual capacity theory asks whether the employer was at one and the same time functioning not only as employer but also in a second capacity which generates obligations independent of those imposed on Briggs as employer.

Thus the majority uses a second approach to determine whether the employer is functioning as employer or is functioning in a second capacity. In this second approach the majority tries to delineate the function of an employer and the employer's obligation to an employee which arise from the employment relation. This delineation is not an easy task. The majority concludes that providing medical service is a function of Briggs as employer, because Briggs has an obligation to provide medi-

---

wages and the other for the sake of the profits. The act is based not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment because of and in the course of which he has been injured."

The "but for" test leads the majority to focus on whether Briggs incurred obligations to the employee or to the public. *Supra*, p. 319. It is on this basis that the majority seeks to distinguish *Duprey v. Shane*, 39 Cal. 2d 781, 249 P.2d 8 (1952) (the chiropractor case), and *Reed v. Yaka*, 373 U.S. 410 (1965) (the stevedoring case). The majority appears to conclude that when the employer's function gives rise to duties to the general public, as well as to the employee, there may be a second legal persona.

The "but for" test also leads the majority to focus on the original injury being work related. *Compare Garcia v. Iserson*, 42 A.D.2d 776, 346 N.Y.S.2d 572 (1973), in which the court held that injury caused by the employer's negligent medical care of a non-work related illness was compensable exclusively under worker's compensation.

cal care to an employee who has a work-related injury. The majority says that "under the Worker's Compensation Act an employer is obligated to provide for medical treatment" (*supra,* p. 319), that "the obligation to a work-injured employee of the medical-service function, whether performed by the employer or by another, stemmed wholly from, and was a part of the employer's function and is mandated by the Worker's Compensation Act," (*supra,* p. 319) and that "the function of . . . treatment of employees [is] an obligation mandated by the Worker's Compensation Act itself." (*Supra,* pp. 319, 320.)

I acknowledge that an employer may have a common-law duty as employer to render first aid and emergency assistance directly to an injured employee, but I disagree with the majority's view that Briggs is fulfilling its obligation as employer when it maintains a medical facility at the plant site and renders extended and prolonged medical treatment to an employee injured at work.[7]

It is beyond dispute that medical benefits are a central concern of the worker's compensation act. 2 Larson, *Workmen's Compensation Law* sec. 61.00 (1981); National Comm'n on State Workmen's Compensation Laws, *Compendium on Workmen's Compensation* ch. 10 (1973). But the employer's obligation in connection with this central concern may be satisfied in Wisconsin by the employer making available and paying for medical care. The employer need not render medical treatment directly to the employee in its own plant by its own employees in order to satisfy its obligations as employer under the worker's compensation act.

The Wisconsin worker's compensation act does not,

---

[7] According to the briefs, which are not supposed to supply facts not of record, Briggs' staff of nurses gave treatment to Jenkins twice a day for a couple of months.

contrary to what the majority intimates, mandate that the employer engage directly in a medical service function or that Briggs maintain a nursing staff to treat injured employees. The majority cites sec. 102.42(1), Stats. 1979–80,[8] to support the statement that the legislature mandates the medical service

[8] Sec. 102.42, Stats. 1979–80, provides in part as follows:

"102.42 **Incidental compensation.** (1) TREATMENT OF EMPLOYE. The employer shall supply such medical, surgical, chiropractic, podiatric and hospital treatment, medicines, medical and surgical supplies, crutches, artificial members, appliances, and training in the use of artificial members and appliances, or, at the option of the employe, if the employer has not filed notice as provided in sub. (4), Christian Science treatment in lieu of medical treatment, medicines and medical supplies, as may be reasonably required to cure and relieve from the effects of the injury, and to attain efficient use of artificial members and appliances, and in case of the employer's neglect or refusal seasonably to do so, or in emergency until it is practicable for the employe to give notice of injury, the employer shall be liable for the reasonable expense incurred by or on behalf of the employe in providing such treatment, medicines, supplies and training. Where the employer has knowledge of the injury and the necessity for treatment, the employer's failure to tender the necessary treatment, medicines, supplies and training constitutes such neglect or refusal. The employer shall also be liable for reasonable expense incurred by the employe for necessary treatment to cure and relieve the employe from the effects of occupational disease prior to the time that the employe knew or should have known the nature of his or her disability and its relation to employment, and as to such treatment subs. (2) and (3) shall not apply. The obligation to furnish such treatment and appliances shall continue as required to prevent further deterioration in the condition of the employe or to maintain the existing status of such condition whether or not healing is completed.

"(2) CHOICE OF PRACTITIONER. (a) Where the employer has notice of an injury and its relationship to the employment the employer shall offer to the injured employe his or her choice of any physician, chiropractor or podiatrist licensed to practice and practicing in this state for treatment of the injury. By mutual agreement, the employe may have the choice of any qualified

or treatment. Sec. 102.42(1), Stats. 1979–80, specifies the treatment, medicine, devices, and training which an employer must supply as incidental compensation, *Klein Industrial Salvage v. DILHR,* 80 Wis. 2d 457, 462, 259 N.W.2d 124 (1977), but no party before us claims that Briggs has a duty to employ a medical staff to treat injured employees. The parties concede that Briggs has options under the worker's compensation act. Briggs may, if it wishes, hire its own medical staff and thus personally provide medical treatment to the employee. Or Briggs may pay for the medical treatment provided by persons not employed by Briggs. The worker's compensation act obligates the employer to furnish medical treatment in the sense of making medical treatment available to the employee and paying for the treatment; the act does not obligate the employer to engage directly in the delivery of medical care.

Briggs in its capacity as employer must make medical care available, but when Briggs voluntarily undertakes to render prolonged and extended medical treatment di-

practitioner not licensed in this state. In case of emergency, the employer may arrange for treatment without tendering a choice. After the emergency has passed the employe shall be given his or her choice of attending practitioner at the earliest opportunity. The employe has the right to a 2nd choice of attending practitioner on notice to the employer or its insurance carrier. Any further choice shall be by mutual agreement. Partners and clinics are deemed to be one practitioner. Treatment by a practitioner on referral from another practitioner is deemed to be treatment by one practitioner.

"(b) The employer is not liable for the expense of unreasonable travel to obtain treatment.

"(3) PRACTITIONER CHOICE UNRESTRICTED. If the employer fails to tender treatment as provided in sub. (1) or choice of an attending practitioner as provided in sub. (2), the employe's right to choose the attending practitioner is not restricted and the employer is liable for the reasonable and necessary expense thereof."

rectly to its injured employee—whatever its motivation, e.g., to reduce costs or to provide a benefit to its employees—Briggs has undertaken a function which is not required by the employer-employee relation or by the worker's compensation act and which is not an integral part of Briggs' business of manufacturing and selling. The *quid pro quo* embodied in the worker's compensation act was that the employer would compensate the employee for injury; the employee would receive scheduled amounts for injuries received in employment; and the common-law tort liability for injuries received in employment would be eliminated. By moving from payment for medical services to rendering the services directly, Briggs has moved outside the confines of the "compromise" of the worker's compensation act. *Borgnis v. Falk Co.*, 147 Wis. 327, 337, 354, 133 N.W. 209 (1911); *Anderson v. Miller Scrap Iron Co.*, 169 Wis. 106, 116, 170 N.W. 275 (1919); *Guse v. A.O. Smith Corp.*, 260 Wis. 403, 407, 51 N.W.2d 24 (1952).

The legal rules governing the responsibilities of health care providers are different in quality and range from the rules governing the responsibilities of a manufacturer or seller to its employees. Even though Briggs may not provide medical treatment to the public, it has in my view, by directly rendering medical treatment, become a separate distinct legal persona, a health care provider.[9] Briggs is performing in a capacity which generates the obligations of due care in medical treatment, obligations which are independent of those imposed on Briggs as employer.

Larson suggests that the key to determining whether the employer's medical service function generates obligations unrelated to those generated by the employment

---

[9] 2A Larson, *Workmen's Compensation Law* sec. 72.80 at 14–118; sec. 72.90 at 14–153 (1974).

relation lies in the difference between providing services in the sense of paying for them and providing services in the sense of directly performing them. Larson explains the payment-performance test for dual capacity in the medical treatment cases as follows:

"The doctor-patient relation, with all the legal obligations that it entails, does not spring up as the result of an essentially financial act—paying the doctor's bill. But it does spring up as the result of undertaking to perform the medical treatment directly.[10]

"[P]aying for services and physically performing them . . . have a crucial difference. It is virtually impossible to cause physical injury by writing a check. It is very possible to cause physical injury by administering medical treatment to a patient . . . ."[11]

To Larson the key question then is whether the employer performed, that is controlled, the medical care that caused the injury as distinguished from making it available or paying for it. If the employer controlled the medical care that caused the injury, the employer has acted in a second capacity.[12] Since the majority reads the cross-claim as alleging that Briggs controlled the medical care, I conclude Briggs acted in a second capacity.

My conclusion that Briggs acted in a second legal capacity is not determinative, however, of the question of whether Briggs should be liable in a tort action. As Larson points out, there remains the question of which of the two capacities should control.[13] I suggest that

---

[10] 2A Larson, *Workmen's Compensation Law* sec. 72.80 at 14–118 (1974). For further discussion of the doctor-employer relation Larson refers the reader to his discussion of the insurer as third party. *See* note 11 and text. Briggs was self insured.

[11] 2A Larson, *Workmen's Compensation Law* sec. 72.90 at 14–153 (1974).

[12] 2A Larson, *Workmen's Compensation Law* sec. 72.80 at 14–151–155, 161 (1974).

[13] 2A Larson, *Workmen's Compensation Law* sec. 72.80 at 14–122 (1974).

to determine which capacity controls, the court should focus on whether the injury in question is within the risks to which the employee is exposed by employment in the industry.[14] It is only these risks which the legislature intended to be covered by the worker's compensation act.

The employer's capacity as employer should control—and the compensation remedy should be exclusive—when the injury arises out of a risk or hazard to which the employee is exposed in the performance of his job. The employer's second capacity should control—and the compensation remedy should not be exclusive—when the injury arises out of a risk or hazard which is not one to which the employee is exposed in the performance of his job. Focusing on the risks of employment from the employee's perspective comports with the theory of the worker's compensation act and the intent of the legislature. The compensation statute was not intended to immunize an entity which happens to be an employer from any and all liability to a person who happens to be an employee. The legislature intended the worker's compensation act remedy to be exclusive only as to injuries resulting from the risks to which work in the industry exposes the employee.

When Briggs took direct control over medical care instead of writing a check for medical care, it was subjecting the employee to a risk that was outside the risks contemplated by the worker's compensation act. Briggs subjected its employee to risks that do not arise simply as a result of the employee being employed in the work force. Injury from malpractice flows not from the work

[14] Larson also suggests that if a court adheres to the well-established rule that doubts as to statutory interpretation should be resolved in favor of preserving rather than abolishing an individual's valuable rights the non-employer capacity should control. 2A Larson, *Workmen's Compensation Law* sec. 72.80, at 14–122–23, 14–164 (1974).

place but from Briggs' undertaking a separate and distinct relationship with an employee.[15] In my view, the majority has, in this case, by immunizing Briggs from a tort suit, extended the scope of the worker's compensation act beyond that intended by the legislature.

For the reasons set forth, I dissent.

[15] The majority intimates that because under the worker's compensation act the employer compensates an employee for injuries caused by the conduct of a physician who treats an injured employee, the injury from the malpractice is an industrial injury compensable under the act and the employer is immune from tort responsibility for the act of the physician. *Supra*, p. 316.

The majority appears to be saying that if the aggravation of the injury is compensated for under the act, the aggravating event must by definition arise out of the employment. Injury arising from medical malpractice is not an injury compensable under worker's compensation; the original work-related injury is the injury covered under worker's compensation. There is a distinction between the injury covered under the act and the elements of damage compensable for an injury covered under the act. *See Coleman v. American Univ. Ins. Co.*, 86 Wis. 2d 615, 621, 273 N.W.2d 220 (1979); 2A Larson, *Workmen's Compensation Law* sec. 65.10 (1974). The damages resulting from acts of the health care provider are in the "chain of causation" and enhance the compensable award for the original work-related injury. *Selleck v. Janesville*, 100 Wis. 157, 163, 164, 75 N.W. 975 (1898); *Pawlak v. Hayes*, 162 Wis. 503, 507, 156 N.W. 464 (1916); *Fisher v. Milwaukee, E. R. L. Co.*, 173 Wis. 57, 60, 180 N.W. 269 (1920); *Lakeside Bridge & Steel Co. v. Pugh*, 206 Wis. 62, 66, 67, 238 N.W. 872 (1931).

Sabourin and Badger, in their reply brief to this court (p. 2), set forth this theory as follows:

". . . There is no contradiction in holding an employer, in his employer capacity, liable for Worker's Compensation benefits for the initial injury and for any aggravation of that injury and also holding him liable in his capacity as a provider of medical services, as a third party, for the injury which is caused by his negligence in providing medical services. This construction would be in harmony with the Worker's Compensation Act, which allows such a double recovery from negligent outside medical care providers."

The majority's opinion in effect deprives the employees of the common-law remedy against the health care provider, a remedy which, as the legislative history shows, the legislature has care-

fully protected in the worker's compensation law. Prior to 1917, the employee had to elect whether to seek worker's compensation from the employer or to sue the third party (including the physician) in tort. In 1917, the legislature provided that the employee could collect worker's compensation and could also pursue a tort claim against the physician for medical malpractice. Laws of 1917, ch. 624, sec. 2394–24. It was not until 1931 that the legislature provided that the employee could collect worker's compensation and pursue a tort claim against third parties. Laws of 1931, chs. 132, 403, 469. The legislature has also provided that the employer could share in a third party award unless the third party was a specified health care provider. Sec. 102.29(3), Stats. 1979–80. Thus it is apparent from this legislative history that the legislature deliberately adopted a policy of allowing the employee to sue specified health care providers for malpractice regardless of the benefits the employee received under the worker's compensation act and allowing the employee to recover "double damages" for injury from malpractice, *i.e.* worker's compensation and tort damages. Sec. 102.29(3), Stats. 1979–80.