Leo MULDER and Marie Mulder, Plaintiffs-Respondents,

v.

ACME-CLEVELAND CORPORATION, Defendant and Third-Party Plaintiff-Respondent, General Electric Company, Defendant-Appellant,

Kohler Company, Third-Party Defendant-Respondent.

Supreme Court

*No. 77–432. Argued January 8, 1980.—Decided April 1, 1980.*
(Also reported in 290 N.W.2d 276.)

For the appellant there were briefs by *John A. Kluwin, Eric J. Van Vugt* and *Kluwin, Dunphy, Hankin & McNulty* of Milwaukee, and oral argument by *John A. Kluwin* and *Eric J. Van Vugt.*

For third-party defendant-respondent there was a brief by *Clayton R. Hahn, Donald H. Piper* and *Borgelt, Powell, Peterson & Frauen, S. C.,* of Milwaukee, and oral argument by *Clayton R. Hahn.*

For the State of Wisconsin the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J.   This third party action had its origin in a worker's compensation claim which arose out of an injury to Leo Mulder while he was in the course of his employment at the Kohler Company. Compensation payments were made by the Kohler Company. Subsequently Leo Mulder and his wife brought a third party action against Acme-Cleveland Corporation and General Electric Company alleging that Leo Mulder's injuries were the result of the negligence of Acme-Cleve-

land in designing and manufacturing a molding machine and that General Electric was negligent in respect to the design and manufacture of a photoelectric safety device. Acme-Cleveland brought a third party action against the Kohler Company, and General Electric filed a cross-complaint against the Kohler Company for contribution and indemnity because of the Kohler Company's alleged negligence in respect to the employee Mulder.

Because the Kohler Company paid worker's compensation to Mulder, as provided by ch. 102, Stats., Kohler moved to dismiss Acme's third party complaint and General Electric's cross-complaint, asserting the defense that sec. 102.03 (2), Stats.,[1] gives it immunity from any liability other than worker's compensation. The trial court granted the Kohler Company's motion and dismissed the third party action brought by Acme and the cross-complaint of General Electric. General Electric brings this appeal. We affirm the order of the trial court.

The facts indicate that Mulder was injured on August 26, 1974, while operating a molding machine on the premises of the Kohler Company. Mulder's amended complaint states that a photoelectric safety device manufactured by General Electric failed to deactivate the molding machine when Mulder attempted to remove a broken casting; and, as a consequence, he was pinned against the hot dies in the machine and was badly burned. In addition, the amended complaint alleged that Acme-Cleveland and General Electric were liable for producing and marketing defective devices.

Both Acme-Cleveland and General Electric demanded contribution or indemnification from the Kohler Com-

---

[1] "(2) Where such conditions exist the right to the recovery of compensation pursuant to this chapter shall be the exclusive remedy against the employer and the worker's compensation insurance carrier."

pany. The trial court accepted the Kohler Company's argument that its exclusive responsibility was to pay worker's compensation. Accordingly, it dismissed the complaint and cross-complaint against the Kohler Company demanding contribution or indemnification. Only General Electric has appealed.

General Electric acknowledges that the trial court's dismissal of its claim for contribution against the Kohler Company is consistent with the uniform holdings of this court. General Electric argues, however, that the interpretation given to the statute by this court over a period of years, and the trial court in the instant case, deprives General Electric of property without due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution and deprives General Electric of a remedy for a wrong in violation of art. I, sec. 9, of the Wisconsin Constitution.[2]

As a sequel to this argument of unconstitutionality, General Electric urges that this court modify its long-standing construction of sec. 102.03(2), Stats., the exclusive-remedy provision, to reflect the principle underlying Wisconsin's comparative negligence scheme that losses should be allocated in proportion to fault. We decline to hold that the past construction placed upon the exclusive-remedy provision is unconstitutional, and we decline to modify our construction of that statute.

Nevertheless, the problem posed by General Electric's argument is real. Although sec. 102.03(2), Stats., makes it clear that an injured employee can only recover compensation payments against an employer, the employee may maintain a tort action against a third party whose

---

[2] "**Remedy for wrongs.** SECTION 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

negligence caused or contributed to the injury. Sec. 102.29(1). That same section of the statutes allows the employee to retain one-third of the recovery against the third party and reimburses the employee for out-of-pocket collection costs. In addition, it gives the employee the balance of the tort action award remaining after the employer is reimbursed for the full amount of the worker's compensation benefits originally paid the employee. Under that statute, both the employer and the worker's compensation insurer can join the employee's third party action or commence one on their own initiative.

This court has uniformly construed sec. 102.03(2), Stats., as denying any remedy of a third party tortfeasor against an employer, because the statute makes the payment of worker's compensation the employer's exclusive liability for work-related injuries. Thus, where a negligent third party is held liable to an injured worker, it cannot require contribution from an employer even though the employer was substantially more at fault than the third party. *A. O. Smith Corp. v. Associated Sales & Bag Co.*, 16 Wis.2d 145, 113 N.W.2d 562 (1962); *Wisconsin Power & Light Co. v. Dean*, 275 Wis. 236, 81 N.W.2d 486 (1957); *Buggs v. Wolff*, 201 Wis. 533, 230 N.W. 621 (1930). This result is premised on the reasoning that, because an employee cannot bring a tort action against his employer, there is no common liability; and the employer cannot be impleaded for contribution as a joint tortfeasor. Because the employer's liability is determined by statute, which makes that liability exclusive, and not by principles of common law negligence, this court has reasoned that the common liability between third parties and the employer requisite for a joint tortfeasor status is absent. The same rationale bars an action for indemnification absent a specific

and express agreement. *Lampada v. State Sand & Gravel Co.,* 58 Wis.2d 315, 206 N.W.2d 138 (1973).

Federal courts, in applying the Wisconsin worker's compensation law, have also construed sec. 102.03(2), Stats., as barring third party tortfeasor's actions for contribution or indemnity against employers subject to the Wisconsin act. *E.g., Schuldies v. Service Machine Co., Inc.,* 448 F. Supp. 1196 (E.D. Wis. 1978).

It is clear that the rule prohibiting contribution or indemnity in a third party action arising out of a worker's compensation claim is not completely consistent with the general common law principles now accepted by this court. Generally, Wisconsin common law permits a plaintiff to collect the total damages from any of several parties whose negligence combined to cause the injury and also permits the operation of comparative-negligence principles for the allocation of contribution between joint tortfeasors. *Bielski v. Schulze,* 16 Wis.2d 1, 114 N.W.2d 105 (1962).

The United States District Court case of *Schuldies, supra,* provides an excellent example of a third party tortfeasor's situation where an action is brought against an employer who has paid compensation. The jury in *Schuldies* found the employer 70 percent negligent, the employee 5 percent negligent, and the third party 25 percent negligent. The District Court, applying Wisconsin law as construed by this court, rejected the third party tortfeasor's claim that it was inequitable for it to pay 95 percent of the damage verdict when it was found to be only 25 percent negligent.

Under the facts set forth in *Schuldies,* the operation of sec. 102.03(2), Stats., barring a third party from contribution against the employer in conjunction with the third party liability statute, sec. 102.29, would allow an employer who was found to be 70 percent contributorily negligent to recover the full amount of its work-

er's compensation payments out of the plaintiff employee's recovery from the third party tortfeasor. Under this scheme, then, the compensation paid in lieu of damages by an employer who is subsequently found negligent must be repaid to it from damages collected from a third party tortfeasor whose concurrent negligence may be relatively inconsequential. 2A Larson, *Workmen's Compensation Law*, sec. 75.23, pp. 14–269–71, states:

"[I]t is admittedly rather an odd spectacle to see a negligent employer reimbursing himself at the expense of a third party . . . ."

Nevertheless, Larson has typified the situation which arises out of the operation of third party actions and the exclusive-remedy provisions of worker's compensation acts as being "[p]erhaps the most evenly-balanced controversy in all of compensation law." Larson, *supra*, sec. 76.10, p. 14–287.

The pros and cons of the controversy were succinctly summarized by the Minnesota Supreme Court in *Lambertson v. Cincinnati Corp.*, 312 Minn. 114, 120, 257 N.W.2d 679 (1977):

"The essence of the controversy is this: If contribution or indemnity is allowed, the employer may be forced to pay his employee—through the conduit of the third-party tortfeasor—an amount in excess of his statutory workers' compensation liability. This arguably thwarts the central concept behind workers' compensation, i.e., that the employer and employee receive the benefits of a guaranteed, fixed-schedule, nonfault recovery system, which then constitutes the exclusive liability of the employer to his employee. . . . If contribution or indemnity is not allowed, a third-party stranger to the workers' compensation system is made to bear the burden of a full common-law judgment despite possibly greater fault on the part of the employer. This obvious inequity is further exacerbated by the right of the employer to recover directly or indirectly from the third party the amount he has paid in compensation regardless of the

employer's own negligence, [Citations omitted] Thus, the third party is forced to subsidize a workers' compensation system in a proportion greater than his own fault and at a financial level far in excess of the workers' compensation schedule.

"The even balance in this controversy results from conflicts among the policies underlying workers' compensation, contribution/indemnity, and comparative negligence and the fault concept of tort recovery."

Although the Minnesota Supreme Court, under a differently worded exclusive-remedy provision, held the exclusive remedy unconstitutional, Wisconsin case law is in harmony with a majority of those jurisdictions which have construed comparable exclusive-remedy provisions. *See,* Davis, *Third-Party Tortfeasor's Rights,* 4 Hofstra Law Rev. 571, App. I, at 592 (1976).

Although we recognize the problem asserted by General Electric on this appeal, it must be remembered that worker's compensation laws constitute an all-pervasive legislative scheme which attempts to effect a compromise between the employer and the employee's competing interests. The worker is benefitted by certain recovery irrespective of his own fault and irrespective of the employer's absence of fault. Additionally, the worker's compensation legislation abrogated an employer's common law defenses of contributory negligence, assumption of risk, and the fellow-servant rule. Although the employer's defenses were abrogated, simultaneously the worker was obliged to accept a limited and scheduled compensation award. Worker's compensation laws are basically economic regulations by which the legislature, as a matter of public policy, has balanced competing societal interests.

This court recently noted in *Coleman v. American Universal Ins. Co.,* 86 Wis.2d 615, 621, 273 N.W.2d 220 (1979):

"It is boilerplate law in Wisconsin that the rationale underlying statutory worker's compensation is that

workers accept smaller recoveries than those potentially available at common law in return for coverage of all work-related injuries regardless of fault. [Citations omitted] Instead of damages, the statutory compensation scheme provides an injured employee with medical care and income maintenance, the latter being figured as a percentage of preinjury income."

The exclusive-remedy provision, sec. 102.03 (2), Stats., is an integral feature of the compromise between the interest of the employer and the interest of the worker. That portion of the Worker's Compensation Act, sec. 102.03 (2), provides in relevant part that:

"[T]he recovery of compensation pursuant to this chapter shall be the exclusive remedy against the employer and the worker's compensation insurance carrier."

General Electric on this appeal argues that the judicial gloss placed upon this section goes too far—that a reasonable reading of the statute would lead to the conclusion that it is only the remedy of the worker and not of third parties that is barred. This assertion would be more acceptable were we writing upon a clean slate and were this argument not posed before. A similar argument was asserted in *Guse v. A. O. Smith Corp.*, 260 Wis. 403, 51 N.W.2d 24 (1952). There the claim was for the loss of a husband's consortium as a result of an injury sustained by a worker's wife. The husband's assertion was that his cause of action for consortium was separate and distinct from the wife's claim under the compensation act and that his cause of action was not affected by the exclusivity provision of the act. The court concluded, however, that the husband's assertion was groundless, because:

"[T]he legislature intended to impose upon employers an absolute liability, regardless of fault; and in return for this burden, intended to grant employers immunity from *all* tort liability on account of injuries to employees." (Emphasis supplied.) *Guse, supra* at 406–07.

In reaching that conclusion, the court looked to the legislative history of sec. 102.03 (2), Stats. It stated that the act, from the time of its passage as ch. 50, Laws of 1911, until its revision in 1931, negated such possible construction, because of the express provision of the original enactment in sec. 2394–4, Stats. (1911). That original statute provided:

"Liability for the compensation hereinafter provided for, *in lieu of any other liability whatsoever,* shall exist against an employer for any personal injury accidentally sustained by his employee, and for his death . . . ." (Emphasis supplied.)

The court in *Guse* pointed out that the 1931 provision carried with it a revisor's note which stated:

"The meaning of the chapter remains the same as before. It is the intention to change the verbiage without changing the law." (at 406)

It is clear that this court's interpretation, which outlaws any contribution by the employer or which immunizes an employer from otherwise recognized common law suits where the underlying injury was work connected, is not the result of a superimposed judicial gloss but, rather, reflects the explicitly stated legislative intent.

This court's reasoning in *Borgnis v. Falk Co.,* 147 Wis. 327, 133 N.W. 209 (1911), is consistent with the legislature's expressed intent to limit an employer's liability for the *quid pro quo* of an employee's sure and swift recovery of scheduled payments. In *Guse,* quoting *Borgnis,* which held the compensation act constitutional, this court stated:

" 'The legislature, in response to a public sentiment which cannot be mistaken, has passed a law which attempts to solve certain very pressing problems which have arisen out of the changed industrial conditions of our time. It has endeavored by this law to provide a

way by which employer and employed may . . . escape entirely from that very troublesome and economically absurd luxury known as personal injury litigation, and resort to a system by which every employee . . . may receive at once a reasonable recompense for injuries accidentally received in his employment under certain fixed rules, without a lawsuit and without friction. . . .

" '. . . the . . . employer . . . can never be mulcted in heavy damages, and will know whenever an employee is injured practically just what must be paid for the injury. Surely this is a different situation from the situation of the man who is liable to be brought into court by an injured employee at any time and obliged to defend common-law actions upon heavy claims unliquidated in their character, the outcome of which actions none can foretell.' " (Emphasis deleted.) *Guse* at 407.

It is the general tenor of the entire compensation act that an employer should be insulated from participation in the judicial determination of negligence. The abrogation of the exclusivity provision in respect to an employer by permitting contribution or indemnity in proportion to the employer's fault would frustrate the basic intent underlying the compensation act. As we said in *Guse, supra* at 408:

"Thus this court has consistently construed the act as substituting an employer's statutory liability and has upheld the employer's immunity from all tort liability granted by the act; and has repeatedly refused to permit that immunity to be impaired or circumvented." (Empasis deleted.)

*Guse,* at 407, relying upon *Anderson v. Miller Scrap Iron Co.,* 169 Wis. 106, 170 N.W. 275, 171 N.W. 935 (1919), points out that not only is the remedy afforded by the act statutory and exclusive, but that, also, as a result of the act, there is no common law tort liability.

Although the exclusive liability of the employer under the compensation act is defensible because of the employee's *quid pro quo* of certain and speedy payment,

there is nevertheless a logical impediment to applying the principles of *quid pro quo* to a tort action brought by a third party. The third party's predicament was aptly summarized by the Minnesota Supreme Court in *Lambertson, supra* at 129. It stated:

" '[W]hereas the injured employee got *quid pro quo* in receiving assured compensation payments as a substitute for tort recoveries, the third party has received absolutely nothing and, hence, should not be impliedly held to have given up rights which he had before. It is unfair, so the argument runs, to pull the third party within the principle of mutual sacrifice when his part is to be all sacrifice and no corresponding gain.' " (Quoting A. Larson, *Workmen's Compensation: Third Party's Action Over Against Employer,* 65 Nw. U.L. Rev. 351, at 420 (1970).)

While the argument implied in the quotation from Larson has some surface appeal, its accuracy in the context of Wisconsin law is highly questionable. The essence of General Electric's argument is that, by reason of the worker's compensation act's exclusivity provision, it has been forced to forego the existing and valuable right of contribution without receiving a *quid pro quo.*

This assertion is factually incorrect. An examination of the cases comprising the common law of Wisconsin demonstrates that the right of contribution between negligent tortfeasors was not definitively recognized in Wisconsin until the decision of this court in *Ellis v. Chicago & N.W. R. Co.,* 167 Wis. 392, 167 N.W. 1048 (1918). Prosser, *Law of Torts* (4th ed.), sec. 50, pp. 306–07, n. 56. The subsequent case of *Mitchell v. Raymond,* 181 Wis. 591, 195 N.W. 855 (1923), recognized that the rule of contribution between negligent tortfeasors was established in *Ellis* in 1918. Hence it is apparent that the common law of Wisconsin at the time of the enactment of the worker's compensation law did

not provide for contribution. The exclusivity provision, therefore, did not deprive General Electric or other tortfeasors similarly situated of an existing legal right. None existed. Such tortfeasors gave up no right "which he had before." Nevertheless, we recognize that the present bar of a third party tortfeasor's action for contribution against a negligent employer is inconsistent with present Wisconsin tort law. But it is overly simplistic to assert that tortfeasors were denied existing common law rights by the passage of the act or by this court's rulings pursuant to the clear language of the act.

Moreover, whatever abstract equities might exist in favor of General Electric in the instant case, its claim is premature, because the record is devoid of any evidence that the Kohler Company was negligent. Because, under the rule set forth in *Connar v. West Shore Equipment,* 68 Wis.2d 42, 227 N.W.2d 660 (1975), the question of employer's negligence must eventually be submitted to the jury in a third party action, the negligence, if any, of the Kohler Company will eventually be determined.

We decline, however, to dismiss General Electric's claim merely because of prematurity. Rather, we are satisfied that what General Electric seeks to have us do is to revise an all-pervasive scheme of worker's compensation when this court is in no position to consider or decide the public policy issues involved. The legislature, by the Compensation Act of 1911, has established a delicate balance between employers and employees that has served the general public policy interests of the state well for almost seventy years. That legislation was undertaken only after extensive public hearings and after extensive public and legislative debate. It is true that, since the initial enactment of this legislation, we have had marked changes in the law of comparative negligence and products liability, which may, as General Electric

seeks to prove, have substantially, although unintentionally, impinged upon the rights of third parties in worker's compensation litigation. However, the determination of what public policy best serves the people of the state remains a legislative question. This court is not free to establish public policy, nor is it free to change a construction of the law which is not clearly erroneous, for the legislature over a course of many years has acquiesced in the court's construction of the exclusive remedy clause as being consistent with the legislative intent. Illustrative of the court's inability to make the changes suggested by General Electric is the recent case of *Lampada v. State Sand & Gravel Co.*, 58 Wis.2d 315, 206 N.W.2d 138 (1973). In that case the court declined to change its well established holding that actions against supervisory co-employees are barred by the exclusive-remedy provision unless the claim is based on common law negligence toward the injured employee. The court stated:

"[I]t is the legislature alone that can change a law after its construction by the court. And, when the legislature acquiesces or refuses to change the law, the courts are henceforth constrained not to alter their construction. Having determined legislative intent, they have fulfilled their function, which is not to decide what the law ought to be, but rather to construe and apply the law as the legislature had enacted it." (at 320)

We point out that there is a statutorily provided mechanism for changes such as those General Electric suggests. Sec. 102.14, Stats., provides for a council on worker's compensation which is directed to "submit its recommendations with respect to amendments to this chapter to each regular session of the legislature . . . ." It would appear that this is the channel, rather than revised judicial construction, which should be employed to face up to the alleged inequities of which General

▅▅▅▅▅▅

Electric complains. The comment of Arthur Larson, *Workmen's Compensation: Third Party Actions,* 65 Nw. U. Law Rev. 351, at 420, is appropriate:

"It is rather inconsiderate to force courts to speculate about legislative intention on the strength of statutory language, in the framing of which the draftsmen had not the remotest trace of the present question in their minds. The legislature should face squarely the question whether the third party who happens to be so unfortunate as to get tangled up with a compensable injury should, so to speak, individually subsidize the compensation system by bearing alone a burden which normally he could shift to the employer."

▅▅▅▅

It is clear, however, that, were we to conclude that the legislative enactment or our construction of it is indeed unconstitutional, as is asserted by General Electric, we would be obliged to so hold. We conclude, however, that the statute, and our construction of it, is not unconstitutional. The burden is upon General Electric to establish beyond reasonable doubt that the act and our asserted construction of it is unconstitutional. The nature of that burden was explained in *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis.2d 32, 46, 205 N.W.2d 784 (1973). Therein we said:

"It is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, whenever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts."

The statement of the rule when taken in conjunction with the rationale of *Borgnis v. Falk Co.,* 147 Wis. 327,

133 N.W. 209 (1911), makes the asserted allegation of unconstitutionality extremely doubtful. The legislature, when it enacted the compensation act and when it enacted the third party cause of action provision, had the ability through research facilities and public hearings to determine the facts that were relevant to the competing interests that may be implicated when an employee is injured in the course of his employment.

Because the legislature provided for third party actions, it is apparent from the face of the act that consideration was given to the problems which third parties would face in view of the determination that an employer's only liability would be under the act. The legislature reached the public-policy conclusion that the exclusive-remedy provision was reasonable and bore a substantial relationship to a legitimate legislative and public purpose. In essence, General Electric argues that the public policy considerations it urges are paramount to those found by the legislature. This is a view in which we cannot acquiesce absent a legislative redetermination.

This court held in *Engel v. Bindel,* 27 Wis.2d 456, 460, 134 N.W.2d 404 (1965), that the rule against contribution between tortfeasors in worker's actions and against indemnification for implied contracts was not unduly harsh. Were we to accept the theory advanced by General Electric, an integral and vital part of the worker's compensation law would be eliminated. The purpose of the law is to give workers prompt relief, in exchange for which the employer is subject to absolute liability but is freed from expensive and harassing common law actions. This is a public-policy decision arrived at by the legislature after a most careful process of factfinding and weighing of competing policy considerations. To now permit contribution from the employer on the basis of fault would gut the very foundation of the act. We are satisfied that the classification which the legis-

lature has made is reasonable and that it is not constitutionally inappropriate to make employers a favored class where claims of contribution are asserted in third party actions. To the extent that there is any unfairness, a legislative question is presented.

We also conclude that Art. I, sec. 9, of the Wisconsin Constitution is inappropriate to the claim asserted by General Electric. That section provides:

"Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

That section, though of great importance in our jurisprudence, is primarily addressed to the right of persons to have access to the courts and to obtain justice on the basis of the law as it in fact exists. No legal rights are conferred by this portion of the Constitution.[3] Here

---

[3] The origin and purpose of Art. I, sec. 9, is discussed in *Christianson v. Pioneer Furniture Co.*, 101 Wis. 343, 347–48, 77 N.W. 174, 77 N.W. 917 (1898). As *Christianson* points out:

"That provision is very old. Its history dates back to the days of Magna Carta. It was designed to prevent a species of official exactions made as the price of delaying or expediting justice. From the lowest officer to the king himself, in the olden times, bribes were freely demanded and taken to procure the benefits of the laws. They bore no relation whatever to our system of exactions for expenses of litigation, called costs, or the charge as a tax on suits, imposed under laws which bear equally upon all; but they were arbitrary exactions sanctioned by the manners of the times, that went to the personal benefit of the judicial head or body controlling the execution of the law, or to servants or officers connected therewith. It was such abuse, among others, that the barons of England forced King John to abolish by granting the Magna Carta. It contained the following as one of the guaranteed limitations upon kingly prerogatives: 'We will not sell the right and justice to anyone, nor will we refuse it, or put it off.' Says Sir Edward Coke, 'The king, in the judgment of the law, is ever

there is no plausible claim that the parties, in order to have their claims adjudicated under the law, were obliged to purchase justice from public officials as a prerequisite to having their claims adjudicated. Here the denial of General Electric's claim was conformable to the law, for under the well established law of Wisconsin no right of contribution against the employer exists.

We conclude that the exclusivity provision and the construction given it by this court does not violate Art. I, sec. 9. The trial court correctly concluded that General Electric failed to meet its burden of proof in showing that sec. 102.03(2), Stats., is unconstitutional under either the United States Constitution or the Wisconsin Constitution.

*By the Court.*—Order affirmed.

present and repeating in all his courts, '*Nulli vendemus, nulli negabimus, aut differemus rectum vel justitiam,*' and therefore every subject, for injury done him '*in bonis, in terris, vel persona*' by any other subject, be he ecclesiastical or temporal, without any exceptions, may take his remedy by the course of the law and have justice and right for the injury done to him, freely without sale, fully without any denial, and speedily without delay.' So the right thus obtained as a concession from sovereign power has come down to us through the centuries that have passed, and been preserved in all its integrity in substantially all state constitutions. They do not grant the right, but guarantee the preservation of one that existed under the constitution of England."

*See also, Kallas Millwork Corp. v. Square D Co.*, 66 Wis.2d 382, 393, 225 N.W.2d 454 (1975), which refers to the possible application of the constitutional provision where a remedy is sought for a "legislatively *recognized right*." (Emphasis supplied.)