Diana L. MESSNER and John G. Messner,
Plaintiffs-Appellants,

v.

BRIGGS & STRATTON CORP., Defendant-Respondent.†

Court of Appeals

*No. 83–2002. Submitted on briefs May 16, 1984.—
Decided June 20, 1984.*
(Also reported in 353 N.W.2d 363.)

[12] *See* sec. 180.847(2), Stats.
† Petition to review denied.

128

For the plaintiffs-appellants the cause was submitted on the briefs of *Marjan R. Kmiec Law Offices,* with *Richard A. Sachs, Jr.,* of counsel, of Milwaukee.

For the defendant-respondent the cause was submitted on the briefs of *Quarles & Brady,* with *Peter W. Bunde, Thomas Armstrong,* and *John C. Cabaniss* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Moser, J. and Michael T. Sullivan, Reserve Judge.

SULLIVAN, J.   Diana L. Messner (Diana) and John G. Messner (collectively, the Messners) appeal from an order for dismissal in favor of Briggs & Stratton Corporation (Briggs & Stratton).[1] The Messners challenge the constitutionality of sec. 102.18(1)(bp), Stats. (part of the Worker's Compensation Act), which authorizes, as the exclusive remedy for insurer or employer bad

---

[1] Briggs and Stratton moved the trial court for a summary judgment based on lack of subject matter jurisdiction. The trial court signed an order for dismissal. This appeal is taken from that order.

faith, the award to an employee of a "penalty" against the insurer or employer, or both. The Messners contend that the section violates their constitutional rights. The Messners also argue that even if sec. 102.18(1)(bp) is constitutional, their alleged causes of action for bad faith by negligent conduct, malfeasance, intentional infliction of emotional distress, negligent infliction of emotional distress, economic duress, assault and battery, and conspiracy do not fall under sec. 102.18(1)(bp) and were allowable claims. Because the Worker's Compensation Act precludes an employee from bringing a tort action against his or her employer for a work-connected injury, we affirm the trial court's dismissal of the Messners' claims for lack of subject matter jurisdiction.

Diana suffered an injury to her right shoulder while working with an air gun at Briggs & Stratton on February 3, 1982. Soon afterward, she was examined by doctors at the Milwaukee Industrial Clinic who diagnosed the injury and released her for return to work with specified limitations. Upon her return to work, she was placed in Briggs & Stratton's rehabilitation department where employees with physical limitations are placed on light duty jobs compatible with their limitations.

Diana also sought treatment, beginning on February 18, 1982, from her own physician, Dr. Phillips, who initially concurred with the opinions of the physicians at the Industrial Clinic that Diana was able to work at light duty jobs. By February 25, 1982, Dr. Phillips determined that Diana's return to work had aggravated her condition, and he instructed her not to return to work. Several weeks later, Dr. Phillips told Diana that she should return to work. Based on the medical reports received from Milwaukee Industrial Clinic indicating that Diana could perform the light duty work available to her, Briggs & Stratton did not pay her temporary

total disability benefits for the periods when she did not work. Briggs & Stratton did pay, however, for all of Diana's injury-related medical expenses plus $2,344.07 in temporary partial disability benefits and $1,606 in permanent partial disability benefits. In February, 1983, Dr. Phillips determined that the healing period for Diana's injury had ended, and he informed Briggs & Stratton that if Diana returned to factory work involving repetitive motion she would continue to suffer shoulder pain. The Wisconsin Department of Vocational Rehabilitation recommended a rehabilitation program for Diana, and Briggs & Stratton agreed to pay a portion of the costs of the program.

The instant controversy stems from Briggs & Stratton's refusal to pay Diana temporary total disability benefits for the periods when she did not work. Diana filed suit against Briggs & Stratton in circuit court alleging various physical and emotional injuries caused by the company's actions. The trial court granted Briggs & Stratton's motion for summary judgment on the ground that, because Diana's exclusive remedy was under the Worker's Compensation Act, the court lacked subject matter jurisdiction.

## STANDARD OF REVIEW

On review of a summary judgment, an appellate court applies the same standards as the trial court. *Wright v. Hasley,* 86 Wis. 2d 572, 579, 273 N.W.2d 319, 323 (1979). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Sec. 802.08, Stats.

### WORKER'S COMPENSATION ACT

The constitutionality of the Worker's Compensation Act, including its exclusivity provision, has long been established, *see Borgnis v. The Falk Company,* 147 Wis. 327, 133 N.W. 209 (1911), and has been repeatedly upheld, *see Mulder v. Acme-Cleveland Corporation,* 95 Wis. 2d 173, 290 N.W.2d 276 (1980).

Liability under the Act exists against an employer when the following conditions concur: (1) an employee sustains an injury; (2) at the time of the injury both the employer and employee are subject to the provisions of the Act; (3) at the time of the injury the employee is performing service growing out of and incidental to his or her employment; (4) the injury is not intentionally self-inflicted; (5) the accident or disease causing injury arises out of the employee's employment. *See* sec. 102.03, Stats. Where such conditions exist, the right to recovery of compensation under the Act is the employee's exclusive remedy against the employer, any other employee of the same employer, and the worker's compensation insurance carrier. Sec. 102.03(2), Stats.

For years, the Wisconsin Supreme Court consistently interpreted sec. 102.03(2), Stats., the exclusivity provision, as barring the maintenance of tort claims against employers. *See, e.g., Beck v. Hamann,* 263 Wis. 131, 56 N.W.2d 837 (1953); *Guse v. A.O. Smith Corporation,* 260 Wis. 403, 51 N.W.2d 24 (1952); *Deluhery v. Sisters of St. Mary,* 244 Wis. 254, 12 N.W.2d 49 (1943). In 1979, however, the court carved out an exception to the exclusivity principle by holding that sec. 102.03(2), did not bar the plaintiff from maintaining a tort action for bad faith denial of compensation benefits.[2] *See Coleman*

---

[2] The court had only recently recognized the tort of bad faith denial of insurance benefits. *See Anderson v. Continental Insurance Co.,* 85 Wis. 2d 675, 271 N.W.2d 368 (1978).

*v. American Universal Insurance Company,* 86 Wis. 2d 615, 273 N.W.2d 220 (1979). The legislature's reaction to *Coleman* was manifested in sec. 102.18(1) (bp), Stats., effective November 28, 1981, which placed bad faith denial of compensation claims against an employer solidly under the Worker's Compensation Act. The section, as amended in 1983,[3] reads, in pertinent part, as follows:

> The department may include a penalty in its final award to an employe if it determines that the employer's or insurance carrier's suspension of, termination of or failure to make payments or failure to report injury resulted from malice or bad faith. This penalty is the exclusive remedy against an employer or insurance carrier for malice or bad faith.

Diana argues that sec. 102.18(1) (bp), Stats., is unconstitutional in that it denies her rights to a certain remedy under the law, a trial by jury, due process of law and equal protection under the law.

### CERTAIN REMEDY

Article I, § 9, of the Wisconsin Constitution provides that every person is entitled to a certain remedy in the law for wrongs or injuries received and, further, that such remedy is to be free, prompt and in conformity with the law. The certain remedy clause provides persons the right of access to the courts to obtain justice based on the law as it exists. *Mulder, supra,* at 189, 290 N.W.2d at 284. The clause does not confer any legal rights. *Id.* Rather, it simply guarantees that individuals shall not have to "purchase justice from public officials as a prerequisite to having their claims adjudicated." *Id.* at 189–90, 290 N.W.2d at 284.

---

[3] Sec. 102.18(1) (bp), Stats., was amended in 1983 to make clear that it applied to a worker's compensation insurance carrier's bad faith as well as to that of an employer. *See* sec. 15, 1983 Wis. Act 98 (effective December 4, 1983).

■
Thus, the certain remedy clause creates no right to maintain a civil action. Diana's right to free access to the courts *under the law as it exists* is not infringed upon by upholding a law which provides that an employee may not maintain a common law tort action against an employer for a bad faith denial of compensation benefits. That is the law in Wisconsin as it exists now. The certain remedy clause is not violated by enforcing sec. 102.18(1)(bp), Stats. *See Oliver v. Travelers Insurance Co.*, 103 Wis. 2d 644, 649–50, 309 N.W.2d 383, 386 (Ct. App. 1981).

## TRIAL BY JURY

■
The right to a trial by jury of *common-law* claims is protected by the 7th Amendment to the United States Constitution and by art. I, § 5, of the Wisconsin Constitution. Under our worker's compensation statutes, which are in abrogation of the common law, there no longer exists any common-law tort action against an employer for a work-related personal injury. *See id.* at 651, 309 N.W.2d at 386. Hence, the aforementioned constitutional provisions are not violated by worker's compensation exclusivity provisions. *See id.* at 651 n. 5 and accompanying text, 309 N.W.2d at 386–87 n. 5 and accompanying text.

## DUE PROCESS

Diana's due process argument centers on the thesis that a bad faith denial of benefits is not an injury arising out of employment within the purview of sec. 102.03 (1), Stats. Whatever the worth of this proposition or of the challenged legislation, the essential question is whether Diana has proven beyond a reasonable doubt that sec. 102.18(1)(bp), Stats., is unconstitutional:

Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts.

*Id.* at 647, 309 N.W.2d at 385 (quoting *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784, 792 (1973)).

■

When statutes are challenged on due process grounds, the "test is whether the means chosen have a reasonable and rational relationship to the purpose or object of the enactment; if it has, and the object is a real and proper one, the exercise of the police power is valid." *Id.* (*quoting State v. Jackman,* 60 Wis. 2d 700, 705, 211 N.W.2d 480, 484 (1973)). In determining whether the purpose of sec. 102.18(1)(bp), Stats., is rationally related to its means, *Oliver, supra,* is instructive.

*Oliver* concerned a negligence suit by an employee against a co-employee for injuries suffered when, during the course of employment, the employee was struck by an employer-owned truck. The employee's suit against his co-employee, the driver of the truck, was barred by sec. 102.03(2), Stats. In challenging the constitutionality of that section on due process grounds the employee argued that the section set up an arbitrary and capricious classification of non-employee victims of tort-feasors versus employee victims of tort-feasors. *Oliver, supra,* at 652–53, 309 N.W.2d at 387. This court found a rational basis for sustaining the statute in the *quid pro quo* nature of the Worker's Compensation Act:

"[Plaintiff] fails to recognize that the Worker's Compensation Act establishes a *quid pro quo* for the relinquishment of an employee's right to sue a coemployee

for the negligent operation of a company vehicle. The relinquishment of the right to sue is not gratuitous. Although an injured employee gives up the right to sue a negligent coemployee, if the injured employee were placed in the same position as the negligent coemployee, he, too, would receive the benefit of being immune from suit."

*Id.* at 653, 309 N.W.2d at 387–88. The *quid pro quo* concept, was also discussed in *Jenkins v. Sabourin,* 104 Wis. 2d 309, 311 N.W.2d 600 (1981) :

Where conditions of liability exist, the employer must always pay and the worker always recovers. The worker, although not afforded full tort damages, is assured of prompt and sure payment and is relieved of the onus of evidentiary proof and the costs of common-law litigation. The employer on the other hand is relieved of the possibility of harassing tort claims and the uncertainties of tort judgments, but the employer must compensate in scheduled amounts regardless of fault.

*Id.* at 323, 311 N.W.2d at 607.

The rational basis for sec. 102.18(1)(bp), Stats., is that it preserves the *quid pro quo* nature of the worker's compensation scheme. The multiple and protracted lawsuits in circuit court which would ensue if employers were exposed to tort claims for bad faith denial of compensation would emasculate the Worker's Compensation Act and adversely affect both employers and employees. We experience no discomfiture in holding that sec. 102.18 (1)(bp) comports with the essentials of due process; it furthers a long-established, comprehensive legislative scheme, and it is reasonable.

## EQUAL PROTECTION

Diana claims sec. 102.18(1)(bp), Stats., creates two arbitrary classifications—workers covered by the Work-

er's Compensation Act and insureds covered by other insurance policies. In asserting that this statutory classification is violative of the equal protection clause, Diana's burden is to prove legislative abuse of discretion beyond a reasonable doubt. *See Stanhope v. Brown County*, 90 Wis. 2d 823, 837, 280 N.W.2d 711, 716 (1979). This court, on review, will hold the statute to be valid if it can locate any reasonable basis for the classification made. *See Omernik v. State*, 64 Wis. 2d 6, 19, 218 N.W.2d 734, 742 (1974).

Again, the aim of preserving the integrity of the worker's compensation system provides a rational basis for the statutory classification complained of. The probable consequence of allowing the system to be circumvented would be a flooding of the courts with claims of employer or worker's compensation insurer bad faith.

The monetary limitation provision in sec. 102.18(1) (bp), Stats., like the other limits on recovery set forth in the Worker's Compensation Act, represents the legislature's balancing of the divergent interests of employers/ insurers and employees. The apparent arbitrariness of the monetary limit does not make the statute unconstitutional. In the context of governmental torts, our supreme court found a rational basis for a monetary limitation on recovery:

As to the specific monetary limitation on recovery we recognize that whatever figure is selected will be arbitrary in the sense that it is based on imponderables. This monetary limitation is one which the legislature determines balancing the ideal of equal justice and the need for fiscal security.

*Stanhope, supra*, at 843, 280 N.W.2d at 719. We conclude that the statutory classification in sec. 102.18(1) (bp),

Stats., is rationally related to the purposes of the Worker's Compensation Act.

## OTHER CLAIMS

Finally, the Messners contend that, even if sec. 102.18 (1) (bp), Stats., is constitutional, they should have been allowed to maintain in circuit court their tort claims for bad faith by negligent conduct, malfeasance, intentional and negligent infliction of emotional distress, economic duress, assault and battery, and conspiracy.[4] We summarily reject this contention.

The Worker's Compensation Act, as originally enacted in 1911, provided that "[l]iability for the compensation hereinafter provided for, *in lieu of any other liability whatsoever,* shall exist against an employer for any personal injury sustained by his employee, and for his death . . . ." Section 2394-4, Stats. (1911) (emphasis added). The Act was revised in 1931, and the phrase, "in lieu of any other liability whatsoever," was deleted. The accompanying advisory note, however, stated the following: "The meaning of the chapter remains the same as before. It is the intention to change the verbiage without changing the law." *See Mulder, supra,* at 182, 290 N.W.2d at 280. Thus, where the underlying injury is work connected, an employer is immune to otherwise recognized common law suits. *See id.,* 290 N.W.2d at 280-81.

We gather that the Messners are arguing that there is no nexus between Diana's employment and the asserted injuries and that their causes of action thus fall outside

---

[4] The conspiracy allegation is directed against Briggs & Stratton as employer and as compensation insurer.

secs. 102.03, and 102.18(1)(bp), Stats. However, the Messners fail to explain how this could be so. In any case, we are satisfied that, but for Diana's work-related shoulder injury, the Messners could not have asserted the above claims. The claims have their origin in events that occurred because of the employment relationship between Diana and Briggs & Stratton. *See Jenkins, supra* at 318, 311 N.W.2d at 605. The claims are thus work-related and barred by the exclusivity provisions of the Worker's Compensation Act.

Because the Messners have failed to prove that sec. 102.18(1)(bp), Stats., is unconstitutional, and because the exclusive remedy provisions of the Worker's Compensation Act prevent them from maintaining their action in circuit court, we uphold the trial court's dismissal of the Messners' suit for lack of subject matter jurisdiction.

*By the Court.*—Order affirmed.