**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 4, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2018AP1782**

Cir. Ct. No.  2017CV73

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

FRANCIS G. GRAEF,

    PLAINTIFF-RESPONDENT,

  V.

CONTINENTAL INDEMNITY COMPANY,

    DEFENDANT-APPELLANT,

ABC INSURANCE COMPANY,

    DEFENDANT.

--------------------------------------------------------------

FRANCIS G. GRAEF,

    PLAINTIFF-RESPONDENT,

  V.

APPLIED UNDERWRITERS, INC.,

    DEFENDANT-APPELLANT,

**ABC INSURANCE COMPANY,**

   **DEFENDANT.**

_____

APPEAL from an order of the circuit court for Marinette County: JAMES A. MORRISON, Judge. *Reversed and cause remanded with directions.*

Before Stark, P.J., Hruz and Seidl, JJ.

¶1 SEIDL, J. Continental Indemnity Company appeals an order denying its motion for summary judgment that sought to dismiss Francis Graef's personal injury lawsuit.[1] The issue before us is whether an employee who has undisputedly sustained an injury compensable under the Worker's Compensation Act ("the Act"), WIS. STAT. ch. 102 (2017-18),[2] may bring a tort action against a worker's compensation insurance carrier when that action is based upon the carrier's allegedly negligent denial of benefits due under the Act.

¶2 We conclude that the exclusive remedy provision of the Act, WIS. STAT. § 102.03(2), bars such actions. Our conclusion rests on the fact that to successfully prosecute his or her claim, a plaintiff would necessarily have to show that he or she was denied benefits to which he or she was entitled under the Act. The Act, however, already provides a remedy for the wrongful denial of benefits.

_____

[1] By the November 1, 2018 order of the chief judge of the court of appeals, we granted Continental leave to appeal a nonfinal order. By that same order, we granted Applied Underwriters, Inc., permission to participate in the appeal as a co-defendant-appellant. For reasons explained more fully below, we now conclude that we have no jurisdiction over Applied Underwriters because the nonfinal order appealed from did not address any motion filed by Applied Underwriters.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Thus, the plaintiff's right to recovery exists under the Act, and the Act's exclusive remedy provision applies. We therefore reverse the circuit court's decision and remand with directions to dismiss the complaint against Continental.

## BACKGROUND

¶3 The following facts are taken from Graef's complaint and are accepted as true for purposes of this appeal. *See* ***Cohn ex rel. Shindell v. Apogee, Inc.***, 225 Wis. 2d 815, 817, 593 N.W.2d 921 (Ct. App. 1999). On November 1, 2012, a bull gored Graef while he was working in the livestock yard of his employer, Equity Livestock. Continental, Equity Livestock's worker's compensation insurance carrier, subsequently authorized and approved multiple payments for duloxetine, a medication that Graef was prescribed to treat depression caused by this workplace accident.

¶4 On May 12, 2015, Graef attempted to refill his duloxetine prescription at the Oconto Falls Pharmacy. Continental, however, "initially rejected" the pharmacy's request for payment. Consequently, the pharmacy had to call Continental for approval, which was eventually granted, and Graef received his medication.

¶5 Approximately six weeks later, on June 23, 2015, Graef again attempted to refill his duloxetine prescription at the Oconto Falls Pharmacy. Once again, Continental rejected the pharmacy's initial request for payment. On this date, however, Continental did not approve payment before Graef left the pharmacy. Accordingly, Graef did not pick up his prescription because he "could not afford to purchase the medication on his own."

¶6    On August 9, 2015, Graef suffered a self-inflicted gunshot wound to the head.  In 2017, he filed this action in Marinette County Circuit Court.  In his complaint, Graef alleged that Continental was "negligent in failing to continue to authorize and pay for" his duloxetine prescription.  In addition, he alleged his suicide attempt "would not have occurred had [Continental] approved and paid for the prescription," because the duloxetine had been "effective in treating" the depression (which was caused by the workplace injury) that caused him to attempt suicide.[3]  He therefore sought to recover compensatory damages associated with his suicide attempt, including "past and future medical expenses, personal injuries, pain, suffering, [and] disability."[4]

¶7    Continental moved for summary judgment, seeking dismissal of Graef's claim without prejudice.  As grounds, Continental asserted that Wisconsin's worker's compensation law provided the exclusive remedy for Graef's claim.

¶8    At the summary judgment hearing, before addressing Continental's motion, the circuit court first granted Graef's pending motion—filed one week

---

[3] It is undisputed that Graef never challenged Continental's alleged failure to authorize his prescription refill by filing a worker's compensation claim.  To file such a claim, an employee must follow the procedures set forth in the Act, including filing a claim application with the Department of Workforce Development (DWD).  *See* WIS. STAT. § 102.01(2)(ap); WIS. STAT. § 102.17.  The claim is then processed, and the proper benefits determined, pursuant to DWD procedures, guidelines, and schedules.  WIS. STAT. § 102.18.  This standard procedure applies to claims which, like here, seek compensation based upon the substantive rights conferred by WIS. STAT. § 102.42.  *See Rock Tenn Co. v. LIRC*, 2011 WI App 93, ¶15, 334 Wis. 2d 750, 799 N.W.2d 904.

[4] In its brief-in-chief, Continental recognizes that we must accept all of the allegations in Graef's complaint as true for purposes of this appeal.  Still, Continental notes that it "concede[s] nothing" relating to the causal relationship between its allegedly negligent acts and Graef's suicide attempt.

earlier—to amend his complaint to add allegations against Applied Underwriters.[5] The court then orally denied Continental's motion for summary judgment.

¶9    Approximately one month after the hearing, but before the circuit court entered a written order denying Continental's motion, Applied Underwriters filed a motion to dismiss the amended complaint. The court subsequently entered a written order, in which Continental and Applied Underwriters were named parties, denying Continental's motion. This order did not address Applied Underwriters' pending motion. Continental and Applied Underwriters petitioned this court requesting interlocutory review, and we granted leave to appeal.

## DISCUSSION

### I. Continental

¶10    Continental contends the circuit court erred by denying its motion for summary judgment. We independently review a grant or denial of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶11    As such, the first step in reviewing a summary judgment order requires us to examine the pleadings to determine whether a claim for relief has

---

[5] The amended complaint alleged that Applied Underwriters "was associated with Continental Indemnity, and asked to assist in processing the claims of [Graef] regarding his worker's compensation carrier."

been stated. ***Green Spring Farms v. Kersten***, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). A complaint fails to state a claim upon which relief may be granted only if "it is quite clear that under no conditions can the plaintiff recover." ***Cohn***, 225 Wis. 2d at 817 (citation omitted).

¶12 Here, Continental argues that there are no conditions under which Graef can recover on his negligence claim because the Act's exclusive remedy provision bars Graef from recovering damages in tort that he could recover under the Act. Whether the Act's exclusive remedy provision prohibits a plaintiff from bringing a tort claim is a question of law that we review independently. *See **Ehr v. West Bend Mut. Ins. Co.***, 2018 WI App 14, ¶7, 380 Wis. 2d 138, 908 N.W.2d 486.

¶13 The Act represents the legislative compromise between the competing interests of employers, employees, and the general public in resolving compensation disputes regarding work-related physical or mental harms arising in our industrial society. ***Id.***, ¶10. The terms of this compromise are that employees are statutorily guaranteed compensation for their work-related injuries in exchange for their relinquishment of common-law tort remedies. *See **id.***

¶14 An "integral feature" of the Act's compromise is the exclusive remedy provision. ***Id.***, ¶12. It provides, in relevant part, that where the conditions for liability under the Act exist, "the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employee of the same employer *and the worker's compensation insurance carrier*." WIS. STAT. § 102.03(2) (emphasis added).

¶15 Continental concedes that Graef's initial injuries—i.e., those that he suffered when he was gored by the bull—met the conditions for Equity Livestock's liability under the Act. It further concedes that, as Equity Livestock's worker's

compensation insurance carrier, it had a statutory duty to make payments for Graef's duloxetine under WIS. STAT. § 102.42(1).[6] Indeed, it is these very undisputed facts which Continental asserts show that the exclusive remedy provision applies to bar Graef's claim. We agree with Continental's assertion.

¶16    To begin, Graef's claim that Continental is liable for the injuries caused by his attempted suicide depends upon his ability to show that he was wrongfully denied benefits due under the Act. Graef's complaint alleges that: (1) Continental engaged in negligent conduct by "failing to continue to authorize and pay for the medication needed by [Graef] on June 23, 2015"; and (2) and that his suicide attempt "would not have occurred" absent this negligent conduct (i.e., that Continental's negligence caused the suicide attempt). The complaint also explicitly alleges that Continental's duty to pay for his prescription refill was established "by Wisconsin Statute 102"—that is, by the Act.[7]

¶17    Consequently, the viability of Graef's claim hinges upon his ability to show that Continental breached its statutory duty under the Act, regardless of its state of mind while doing so. Moreover, and put another way, no insurer can be

---

[6] Continental also concedes that—if Graef is able to prove the allegations set forth in his complaint—the damages he seeks are recoverable under the Act. This recognition rests upon the longstanding rule that a suicide is compensable under the Act if a claimant can satisfy the "chain-of-causation" test by "showing that the industrial injury caused the suicide." **Brenne v. DILHR**, 38 Wis. 2d 84, 92-93, 156 N.W.2d 497 (1968). We agree that Graef's complaint clearly alleges such a chain of causation, as it states that Graef suffered from depression caused by a compensable workplace injury, and that Continental's breach of its statutory duty to refill the prescription necessary to treat that depression then caused Graef's suicide attempt.

[7] WISCONSIN STAT. § 102.42(1) provides that an employee who suffers an injury compensable under the Act is entitled to "such medical, surgical, chiropractic, psychological, podiatric, dental, and hospital treatment, medicines, medical and surgical supplies, … as may be reasonably required to cure and relieve from the effects of the injury." A worker's compensation insurance carrier is also liable for reasonable and necessary treatment "as required to prevent further deterioration in the condition of the employee or to maintain the existing status of such condition whether or not healing is completed." **Id.**

liable for failing to pay for an individual's prescription medicine unless that insurer has such a duty. Here, the only alleged reason Continental could have such a duty is as Equity Livestock's worker's compensation carrier—and then only because Graef was prescribed the medication to treat depression caused by his workplace accident.

¶18 This connection between the Act and the viability of Graef's claim is critical, because when a claim "could not have [been] asserted" had a work-related injury not occurred, the claim is necessarily "work-related and barred by the exclusivity provisions of the … Act." *Messner v. Briggs & Stratton Corp.*, 120 Wis. 2d 127, 139, 353 N.W.2d 363 (Ct. App. 1984). In other words, when a claim has its "origin in events that occurred because of [an] employment relationship,"— as the allegations in Graef's complaint do for the reasons set forth—the exclusive remedy provision applies. *See id.*

¶19 The case upon which *Messner* based its "origin in events" test, *Jenkins v. Sabourin*, 104 Wis. 2d 309, 311 N.W.2d 600 (1981), lends further support for our conclusion that the exclusive remedy provision applies in this case. *See Messner*, 120 Wis. 2d at 139. In *Jenkins*, our supreme court considered whether the exclusive remedy provision "precludes a common-law cause of action by an employee, who has sustained a compensable injury, against the employer for negligently providing medical attention for that injury." *Jenkins*, 104 Wis. 2d at 310-11. The *Jenkins* court concluded that the exclusive remedy provision did bar such an action, as the employer was acting "in pursuance of its statutory duty as an employer to provide medical attention" when its alleged negligence occurred. *Id.* at 311.

¶20 Similarly, Graef is asserting that Continental acted negligently by failing to satisfy a duty that was undisputedly created by, and existed exclusively because of, the Act. The Act provides a remedy for such conduct—a worker's compensation claim. The exclusive remedy provision therefore applies, as the Act provides the duty and it also provides the potential remedy.[8] *See id.* at 311-12.

¶21 Graef argues that, regardless of whether his claim has its origin in a work-related injury, treating a violation of the Act as an "independent intervening cause" that "excuses liability [would be] wrong when Continental supplied that cause." The premise of this argument misapprehends the function of the exclusive remedy provision. Rather than "excusing" liability for violations of the Act, the provision merely supplants an employee's right to bring an action for common-law tort liability (and its related damages) with his or her right to recover under the Act, which, of course, imposes strict liability upon the occurrence of a workplace injury. *See County of La Crosse v. WERC*, 182 Wis. 2d 15, 32, 513 N.W.2d 579 (1994). This function, which we have already explained is an "integral feature" of the Act, represents a careful balancing of interests by the legislature—a balance that we must "exercise care to avoid upsetting." *Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 102, 559 N.W.2d 588 (1997).

¶22 To that end, we conclude our case law counsels that allowing Graef's tort claim to proceed would upset the balance of interests that is embodied by the exclusive remedy provision and the worker's compensation scheme as a whole. In

---

[8] Graef attempts to distinguish *Jenkins v. Sabourin*, 104 Wis. 2d 309, 311 N.W.2d 600 (1981), on the basis that it discussed the applicability of the exclusive remedy provision to a claim made against an employer, as opposed to a worker's compensation insurance carrier. However, we have previously considered, and rejected, the argument that "different rules should be applied to worker's compensation carriers than to employers" under the exclusive remedy doctrine. *See Walstrom v. Gallagher Bassett Servs., Inc.*, 2000 WI App 247, ¶¶12-13, 239 Wis. 2d 473, 620 N.W.2d 223.

particular, we refer to our supreme court's decision in ***Coleman v. American Universal Insurance Co.***, 86 Wis. 2d 615, 273 N.W.2d 220 (1979), and our legislature's response to that decision. As subsequently explained by our supreme court:

> [I]n ***Coleman***, a worker's compensation claimant alleged that the defendants, the worker's compensation insurer and its adjusting company, acted in bad faith in arbitrarily and capriciously denying him rightfully owed worker's compensation benefits, thereby injuring him by the bad faith denial and delay of worker's compensation payments. In response, the defendants moved for summary judgment on the ground that the claimant's exclusive remedy was under the Worker's Compensation Act, and therefore, the courts had no jurisdiction to entertain this tort action.
>
> ….
>
> The ***Coleman*** court concluded that the bad faith "injury" alleged in ***Coleman*** was separate and distinct from the original job-related injury and thus was not addressed by the Worker's Compensation Act. Accordingly, the ***Coleman*** court held that, under the circumstances of ***Coleman***, "the separate tort of bad faith may be alleged and proved in the courts." In other words, "where a worker's compensation insurer acts in bad faith in the settlement or payment of compensation benefits, a separate tort is committed that is not within the purview of the exclusivity provisions of the worker's compensation law ...."
>
> The legislature was apparently unhappy with the ***Coleman*** decision and revised the statutes to respond to ***Coleman***. It created WIS. STAT. § 102.18(1)(bp) in 1981 that specifically and explicitly provided an "exclusive remedy" in the Worker's Compensation Act for bad faith claims against employers and their insurers.

***Aslakson v. Gallagher Bassett Servs., Inc.***, 2007 WI 39, ¶¶72-75, 300 Wis. 2d 92, 729 N.W.2d 712 (footnotes omitted).

¶23    Graef attempts to downplay any applicability that the legislature's reaction to the ***Coleman*** decision has to this case by stressing that he is alleging only

10

a negligent—as opposed to a bad faith—denial of worker's compensation benefits. We are not persuaded.

¶24   As Continental aptly notes, the short-lived, narrow exception created by *Coleman* that allowed a worker's compensation claimant to sidestep the exclusive remedy provision by alleging bad faith would have been unnecessary if "a mere [negligent] denial of a worker's compensation claim … could be pursued in tort." More importantly, it would be incongruent to conclude that our legislature intended for a claim that a worker's compensation insurance carrier acted in bad faith to be pursued exclusively under the Act while at the same time allowing a claim alleging negligent conduct to proceed in civil court.

¶25   This conclusion follows because "bad faith is an intentional tort." *Jones v. Secura Ins. Co.*, 2002 WI 11, ¶37, 249 Wis. 2d 623, 638 N.W.2d 575. As such, a plaintiff pursuing a bad-faith claim bears a higher burden than one pursuing a nonintentional tort (such as negligence)—the former must prove intent, whereas the latter need not do so. *See id.* This distinction is notable, as a plaintiff pursuing a nonintentional tort therefore is required to make a "lesser showing of culpability" than one pursuing an intentional tort. *See City of Milwaukee v. NL Indus.*, 2008 WI App 181, ¶53, 315 Wis. 2d 443, 762 N.W.2d 757. Accordingly, we conclude that allowing the "lesser" tort of negligence to escape the ambit of the Act's exclusive remedy provision, while the intentional tort of bad faith could not do so, would eschew our directive to "exercise care to avoid upsetting the balance of interests achieved by the [Act]." *Weiss*, 208 Wis. 2d at 102. We decline to do so.

¶26   Graef advances a number of additional arguments in an attempt to convince us that the exclusive remedy provision does not apply to his claim. We address, and reject, each in turn.

¶27   First, Graef argues that "principles of estoppel" should prevent Continental from asserting that the exclusive remedy provision applies, while at the same time "never actually acknowledg[ing] liability under the [Act.]"  As an initial matter, Graef's argument in this regard is undeveloped, as he fails to cite or discuss any of the elements of judicial estoppel.  We could reject his argument on that basis alone.  *See* *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶28   Nonetheless, we address Graef's argument on its merits.  Judicial estoppel is an equitable doctrine that "precludes a party from asserting a position in a legal proceeding and then subsequently asserting an inconsistent position." *Salveson v. Douglas Cty.*, 2001 WI 100, ¶37, 245 Wis. 2d 497, 630 N.W.2d 182 (citation omitted).  There are three elements required for a court to invoke the doctrine: "(1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *Id.*, ¶38.

¶29   In this case, the third element cannot be met because Continental did not convince "the first court to adopt its position."  In fact, the circuit court was the forum in which the litigation arose, and so the third element could not, as a matter of law, have been satisfied.

¶30   In addition to the inapplicability of the doctrine of estoppel, we also reject the underlying premise of Graef's argument—namely, that Continental is trying to "have it both ways" by attempting to enforce the exclusive remedy provision while at the same time refusing to concede liability under the Act.  We perceive nothing inconsistent about Continental maintaining that it is being subjected to an action in the improper forum while at the same time refusing to concede that it would be liable if the action was in the proper forum.  On the

12

contrary, we find Continental's position consistent and permissible, because nothing in its position that the exclusive remedy provision prohibits a separate tort claim for failure to pay benefits due under the Act required it to concede it would be liable for those benefits if the claim was brought in the proper forum.

¶31    Second, Graef contends that because "causation is invariably a factual question," the circuit court is the proper forum to resolve the dispute of whether his work-related injury caused his suicide attempt and whether his claim for resulting damages is barred by the Act.  In support of his contention, he points to our decision in *Cohn*.

¶32    In *Cohn*, an employee committed suicide after allegedly being subjected to harassment in the workplace.  *Cohn*, 225 Wis. 2d at 817-18.  The deceased employee's family brought a wrongful death claim against the employer and a co-employee.  *Id.* at 819.  We reversed the circuit court's decision that the exclusive remedy provision barred the claim, stating:

> If "without the [work-related] injury, there would have been no suicide," the Act provides the exclusive remedy ….  It is possible, however, that Dr. Cohn's suicide was "intentionally self-inflicted," as *Brenne* has glossed that phrase, so as to remove the claim for Dr. Cohn's death from the purview of the Act.  If so, the defendants might be liable, at least in part.

*Id.* at 820 (citing *Brenne v. DILHR*, 38 Wis. 2d 84, 91, 94, 156 N.W.2d 497 (1968)).

¶33    The problem with Graef's reliance on *Cohn* is twofold.  First, we have already concluded that the viability of Graef's claim against Continental—based on the allegations in his complaint—is dependent upon his ability to show that his compensable work-related injury caused his suicide attempt.  Again, this connection exists because Continental's duty to pay medication benefits, which Graef alleges

Continental breached, is established by the Act. In contrast, the viability of the plaintiff's claim in **Cohn** was not dependent upon showing a violation of the Act, as it was disputed whether a compensable workplace injury had even occurred in the first instance. *See id.* at 821.

¶34 Second, the alleged wrongful conduct in **Cohn**, harassment, supported the recognized common-law tort of wrongful death. *See id.* Conversely, here Continental's alleged wrongful conduct does not—by Graef's own admission—support a recognized common-law tort in Wisconsin (i.e., tortious denial of worker's compensation benefits).

¶35 Next, and relatedly, Graef argues that "[n]othing in [The Act] confers such broad immunity" so as to insulate Continental "from liability for a new and separate tort that it committed many years after the bull gored Graef." Once again, however, this argument misconstrues the exclusive remedy provision as shielding a worker's compensation insurance carrier from "liability." To the contrary, the exclusive remedy provision allows for an insurer to be held liable for an employee's new or aggravated injuries, regardless of fault, as long as those new injuries "relate[] back to the original compensable event." *See Jenkins*, 104 Wis. 2d at 315. It simply does so under the Act itself, rather than in tort.

## II. Applied Underwriters

¶36 Applied Underwriters argues that, as a worker's compensation insurance carrier's agent, it is entitled to the same protections against tort liability afforded by the exclusive remedy provision as Continental. By its own admission, however, Applied Underwriters "has not appealed from a written order denying its

own motion to dismiss or for summary judgment." Nonetheless, it asks us to address its argument "[t]o provide guidance on remand and to future litigants."

¶37    We decline Applied Underwriters' invitation for two reasons. First, its answer to Graef's amended complaint denied Graef's allegation that it "had authority and responsibility for authorizing worker's compensation medical, prescription and indemnity payments to [Graef]." Accordingly, the precise role Applied Underwriters played in the events at issue is unclear.

¶38    Second, the only dispositive motion filed by Applied Underwriters below was a motion to dismiss the amended complaint against it, and that motion was filed over a month after the summary judgment hearing. Based on the appellate record before this court, the circuit court has not taken any action on that motion, and so—as admitted by Applied Underwriters—no written order addressing its rights exists from which to appeal. We thus have no jurisdiction to address its arguments. *See **Ramsthal Advert. Agency v. Energy Miser, Inc.***, 90 Wis. 2d 74, 75-76, 279 N.W.2d 491 (Ct. App. 1979).

¶39    In sum, we reverse the circuit court's order denying Continental's motion for summary judgment and remand with directions for the court to grant summary judgment to Continental. On remand, the court may also address Applied Underwriters' pending motion to dismiss the amended complaint against it.

   *By the Court.*—Order reversed and cause remanded with directions.

   Not recommended for publication in the official reports.

15